LALANCE & GROSJEAN MFG. CO. et al. v. HABERMAN MFG. CO.

(Circuit Court, S. D. New York.    May 6, 1898.)

1. PRIVILEGED COMMUNICATIONS—ATTORNEY AND WITNESS.
    Communications between a party litigant or his counsel and one whose sole connection with the case is that of a witness, whether expert or not, called to testify by the party, are not privileged.
2. SAME—PATENT CAUSES—EXPERT EMPLOYED BY PARTY.
    The rules of privilege applicable to communications between attorney and client, or counsel and associate, govern communications of a party to patent litigation or his counsel, with an expert in the art in question, employed by the party to manage the litigation in his behalf, or with such an expert employed as assistant to counsel, in so far as he acts as such assistant, and not as a witness.

Briesen & Knauth, for complainants.
Betts, Betts, Sheffield & Betts, for defendants.

LACOMBE, Circuit Judge.    The question presented upon this application is whether a certain letter written by counsel for the complainants to Mr. Banks, a witness called on behalf of the complainants, which letter is entirely concerned with the matters in

controversy in this suit, is privileged. That communications between client and counsel, and between counsel and associate counsel, are privileged, is, of course, undisputed. This rule is founded upon a public policy, which undertakes to secure the freest and fullest statement of a party's case to the lawyer whom he retained to prosecute or defend. On the other hand, I know of no principle of law which would extend a similar privilege to like communications passing from the party litigant, or his counsel, to one whose sole connection with the case is that of a witness called to testify by the party; nor would the fact that the witness is a scientific man, testifying to the result of his own experiments, at all change the situation. To hold that such communications were privileged might very well open the door to gross abuses.

While I do not find any express authority dealing with the question to what extent, if at all, communications passing between counsel and client on the one side and the so-called "expert" on the other are privileged, the conditions of patent litigation are such that a similar public policy would seem to require an extension of the doctrine of privilege. It is quite conceivable that a patent may be owned by a corporation which would be the actual party litigant, but the entire management of its affairs touching the use of such patent, and the taking of whatever steps may be necessary to sustain it and prevent infringement, be confided to some general manager or superintendent skilled in the art, upon whose judgment solely the officers of the corporation might be accustomed to rely in deciding whether they should prosecute an action, or refrain from doing so, and be the sole one finally to determine upon what lines and to what extent the litigation should be conducted. In such a case the expert would be in reality, so far as litigation upon the particular patent was concerned, the alter ego of the complainant; and the privilege which public policy secures to the individual litigant could not be secured to the corporation litigant unless it was so extended as to include him. So, too, questions of science and art are frequently so mingled with questions of patent law, in controversies arising upon some patent, that a party substantially retains an expert to conduct the case almost as associate counsel with the solicitor. In such a case it would seem fair to apply the same rule to the expert as to the counsel. It would seem, however, that in such a case the privilege should be lost when the expert ceases to act as counsel, and allows himself to be made a witness; at least, to the extent to which he testifies.

In the case at bar the testimony as to the exact position of the witness relative to the parties and to the litigation is somewhat meagre. Complainants' counsel may recall him, and see if proof can be made which will bring him within one or other of the categories above set forth, defendants, of course, being allowed cross-examination. When this evidence is taken and submitted, the point now presented will be decided. I may add that, upon a more careful examination of the record as it stands, I do not find sufficient to support the statement contained in my former memorandum,

namely, "Dr. Banks being the expert employed by complainants," in the sense in which the word "expert" was used.

(June 20, 1898.)

This case again comes here upon additional proofs taken as suggested in memorandum filed May 6, 1898, the sole question to be determined being whether a certain letter is or is not privileged. There seems to be an entire failure of proof that the witness to whom the letter was addressed is or was the alter ego of the plaintiff corporation, within the terms of that memorandum. It does, however, appear that he has been retained by plaintiffs as an expert to assist them in the presentation of their case. As such the witness would seem to come within the privilege suggested in the former memorandum,—as similar to that of counsel. More careful reflection has still further confirmed the impression that such privilege should be forfeited if the "scientific counsel" assume the role of a witness. The point raised here, however, seems to be a new one, and therefore, if counsel for complainants will consent to strike out all the testimony of the witness Banks, such witness will not be required to produce for inspection the letter received by him from the counsel for complainants. Unless, however, Dr. Banks is thus relegated from the category of witnesses to the category of counsel, such letter must be produced by him.