**RADIANT BURNERS, INC., an Illinois corporation, Plaintiff,**

v.

**AMERICAN GAS ASSOCIATION, a not-for-profit corporation, et al., Defendants.**

**No. 57 C 1167.**

United States District Court
N. D. Illinois, E. D.

Oct. 11, 1962.

William J. Friedman, John O'C Fitzgerald, Victor Neumark, Charles Frank Marino, Lee A. Freeman, Richard F. Levy, Robert W. Murphy and Charles W. Houchins, Chicago, Ill., for plaintiff.

Clarence H. Ross, Roland D. Whitman and David C. Baum of Ross, McGowan & O'Keefe, Chicago, Ill., for Peoples Gas, Light and Coke Company and Eskil I. Bjork, Remick McDowell, Bernard H. Wittmann and Daniel Collins.

Haft, Shapiro & Davis, Chicago, Ill., for Sellers Engineering Company.

Jesse Holland, Chicago, Ill., for Allied Gas Co.

Gregory A. Gelderman, Chicago, Ill., for Midcontinent Metal Products Co.

Paul A. F. Warnholtz, Chicago, Ill., for Gas Appliance Service.

James J. Gaughan, Brainard Chapman, Chicago, Ill., for Autogas Co.

Olson, Mecklenburger, vonHolst, Pendleton & Neuman, and Gregory B. Beggs, Chicago, Ill., for Janitrol, Heating & Air-Conditioning.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, James W. Good, Jr., and Charles K. Bobinette, Chicago, Ill., for American Gas Ass'n.

Robert Hanley, Chicago, Ill., for Northern Ill. Gas Co.

Gallop, Climenko & Gould, New York City, for Worthington Corporation (Mueller Climatrol Division).

Stanton E. Hyer, Hyer, Gill & Brown, Rockford, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., Robert Cronin, Isham, Lincoln & Beale, Chicago, Ill., for Central Ill. Elec. & Gas Co.

Lederer, Livingston, Kahn & Adsit, Chicago, Ill., for Florence Stove Co.

Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., for North Shore Gas Co. and Roy E. Jones.

Bell, Boyd, Marshall & Lloyd, Chicago, Ill., for General Electric Co.

James D. Porter and Irving W. Zirbel, Milwaukee, Wis., Karl C. Williams, Rockford, Ill., Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., for A. O. Smith Corp.

William J. Winger, Chicago, Ill., for Peoples Gas, Light & Coke Co., Natural Gas Pipeline Co., Texas Ill. Nat. Gas Pipeline, Eskil I. Bjork, Remick McDowell, Bernard H. Wittmann and Daniel E. Collins.

CAMPBELL, Chief Judge.

Pursuant to my order of August 13th permitting the filing of additional briefs on the issue of a corporation's right to claim the attorney-client privilege, both the defendants and the plaintiff have submitted additional briefs for which I am most appreciative. My reading of these briefs, the plaintiff's in support of and the defendants' in opposition to my Au-

gust 3rd Memorandum and Order, prompts me to make the following additional observations.

I first consider the affirmative arguments advanced by defendants as to why the privilege must or should be extended to a corporation. As to prior judicial decisions and the law of *stare decisis* I naturally consider first the Supreme Court of the United States. Defendants cite only the case I had already found, cited and considered in my initial research of this issue, resulting in my August 3rd Memorandum. United States v. Louisville and Nashville Railroad Co., 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598. As I have already indicated and for the reasons I therein stated I am still of the belief that the Court in Louisville did not discuss or decide the present issue as to a corporation's right to claim the privilege.

Next, as to our own Seventh Circuit Court of Appeals, defendants cite the case of Belanger v. Alton Box Board Co., 180 F.2d 87. Defendants' brief merely cites the Belanger case, and no more. The brief is conspicuously absent any attempt to show wherein the Belanger case considered our present issue, or for that matter, is absent any attempt to show that the Court in Belanger was specifically considering the attorney-client privilege as distinct from the attorney work product privilege. It is true that Belanger does cite portions of an Illinois case, Dickerson v. Dickerson, 322 Ill. 492, 153 N.E. 740, wherein the Illinois Supreme Court refers to the attorney-client privilege. However, it did not consider a corporation's claim to the privilege, both parties to the Dickerson litigation being individuals.

Defendants' brief contains an additional argument which is appropriately referred to as an argument by analogy. Citing the Seventh Circuit case of Palmer v. Fisher, 228 F.2d 603, wherein the Court granted to an accountant the Illinois "accountant" privilege, Ill.Rev.Stat. Ch. 110½, Sec. 51, they argue that this Court should also apply the attorney-client privilege to corporations. Such arguments by analogy are useful only to the extent that the basic facts and circumstances existing in the pending situation are similar to those existing in the claimed analogous situation. I find little similarity between the facts or the law before the Court in Palmer and the facts and the law presently before me. In Palmer the Court of Appeals was considering a statutory and not a common law privilege. Of even more importance, the language of the Illinois "accountant" statute patently creates just what its title would indicate, a privilege for accountants. On the other hand the attorney-client privilege is a privilege of the client and not that of the attorney. To this extent I would suggest that the "accountant" privilege is somewhat similar in nature to the attorney "work-product" privilege. Finally, the Court in Palmer makes no mention of a corporation's right to claim either privilege.

To support a contention that at common law corporations were entitled to the privilege, defendants' brief cites the case of Bolton v. Corporation of Liverpool, 1 My. and K. 88, 39 Eng.Rep. 614 (1833). In the first instance, the decision date of 1833 precludes it from being considered as a part of our common law. Secondly, I am of the opinion that a careful reading of the case discloses that it does not concern itself with the attorney-client privilege. Defendants also cite another English decision decided by the same Lord Chancellor some two weeks prior to Bolton, Greenough, v. Gaskell, 1 My. and K. 98, 39 Eng.Rep. 618 (1833). Defendants correctly represent and describe the Greenough case as concerning itself with the attorney-client privilege as it applies to an individual, there being no mention in the case of a corporation's right to claim the privilege. In Greenough the Court was primarily concerned with a possible restriction or limitation of the attorney-client privilege, namely that it should extend only to information obtained with reference to contemplated or existing legal proceedings. A great

portion of the Lord Chancellor's opinion is devoted to the task of making it clear that the privilege is in no way restricted to matters involved in contemplated or pending litigation. With this additional observation of Greenough in mind I now suggest a reanalysis of the Bolton case, a decision handed down by the same judge some two weeks later. In concluding the Bolton decision the Lord Chancellor states: "I am therefore, upon the whole, of the opinion that cases laid before counsel in the progress of a cause, and prepared in contemplation of, and with reference to an action or suit, cannot be ordered to be produced for the purpose of that action or suit." To justify and explain the Lord Chancellor's sudden stress on the importance of a pending suit, an element which just two weeks prior he had clearly stated was not a requirement to make claim to the attorney-client privilege, I would suggest that a thorough reading of the Bolton decision indicates the privilege considered and granted was that which is now known as the attorney "work product" privilege and not the attorney-client privilege.

Defendants' brief does cite cases (some 43 in all) wherein various courts have apparently granted corporations the attorney-client privilege. But, with commendable candor, defendants' brief also admits to the accuracy of a statement in my prior Memorandum, namely, that those courts which have granted corporations the privilege have done so without a consideration of the present basic issue, that of a corporation being in the first instance entitled to claim the privilege. As to courts having granted corporations the privilege in the past, defendants need cite nothing more than my own actions and earlier statements and rulings in this very case. As I indicated in my first Memorandum, I myself have in the past presumed its existence and granted the privilege to corporations. Needless to say the present issue was not raised and obviously not considered by me on those occasions any more than it

seems to have been considered by the many judges in the cases cited. We all seem to have presumed the existence of the privilege as to corporate clients. Surely, past decisions wherein this presumption was engaged in without the benefit of full legal research and argumentation, and without the benefit of a clearly promulgated judicial finding should receive little weight.

As to scholarly writings other than judicial decisions appearing to espouse a view toward extending the scope of the privilege to include corporations, I would make the following comments. Wigmore and Simon, to both of whom I referred and from whom I quoted in my August 3rd Memorandum, have also presumed a corporation's right to the privilege. However, both make statements which argue well against a corporation's right to make claim to the privilege; and it was these statements that I referred to in my prior Memorandum. Clearly neither Wigmore or Simon go into a discussion of the present basic issue.

Defendants' brief makes mention of the Model Code of Evidence published by the American Law Institute in 1942, Sections 209–213. They also call attention to Rule 26(3) of the Uniform Rules of Evidence which resulted from the 1953 National Conference of Commissioners of Uniform State Laws. Both writings list the terms "corporation" and "association" within their definitions of the term client, as that term is used with reference to the attorney-client privilege. With the highest respect for the legal ability of the authors and drafters of these two works, I respectfully suggest however, that both works were intended to set forth what the law *should be* and not necessarily what the law is. To this extent and in light of this purpose I am in general agreement with both works. Fortunately, or if one prefers unfortunately, I am not in a position however, to change existing law so as to bring it in line with the various model codes, notwithstanding my own personal prefer-

ence for such views. The repository of such authority is in the legislative branches of government which seem, nationally and locally, to have been conspicuously hesitant in having exercised it.

It seems to me from a reading of the many cases dealing with the attorney-client privilege, be they old or recent, that a great deal of confusion exists as to the distinction between the attorney-client and the attorney "work product" privilege. Many courts in applying or speaking of one of the privileges will spell out and apply the requirements of the other privilege. I cannot help but feel that an overall clear cut dichotomy between these privileges does not presently exist, and that because of this there is an increase in the already inherent problems found in any attempted consideration or application of either privilege.

■ These observations patently express my continued belief in the legal conclusion I arrived at in my August 3rd Memorandum. Not only does defendants' subsequent brief fail to cite legal authorities in support of their claim that a corporation does possess the privilege, but, in my opinion it fails to refute the reasons set forth in my earlier Memorandum as to why a corporation does not. I feel that even defendants' exceptionally able brief does not and cannot create cases and law which simply do not exist.

As to my having drawn an analogy between the attorney-client privilege and the privilege against self-incrimination, defendants only argue that the attorney-client privilege is a "policy" privilege, and a fortiori, that the "policy" is to grant the privilege to corporations. Such an argument, that something is so because it should be so, has limited legal merit.·

As to my suggestion that it is next to impossible for a corporation to comply with the confidentiality requirement of the privilege, defendants' answer is wholly inadequate. ·In admitting the right of shareholders and states to examine corporate books and records, they argue that although the right exists it is seldom exercised. Assuming this factual conclusion as to the degree and extent to which these rights are exercised, corporations still fail to comply with the common law requirement of confidentiality. Historically and traditionally this requirement is predicated upon a reasonable intention and expectancy on the part of the attorney and the client to maintain secrecy. Surely one who voluntarily places a document in a position where it is subject to inspection by other persons can hardly be said to have reasonably intended to retain the secrecy of the document, notwithstanding the document having actually retained this non-intended secrecy.

Defendants' brief makes no specific suggestion as to who within the corporate structure should properly be included within, or for that matter excluded from, the ambit of the term "client". They do specifically state their belief that directors, members of executive committees and sales managers, should be included within the intended meaning of term client. They further state their opinion that judges should "presume" that legal papers are in fact kept confidential in a corporation. To this extent they suggest by implication that legal information passed on to directors, executive committee members and sales personnel will not in any way be promulgated by them to others. They suggest this presumption while both knowing and assuming that many directors and executive committee members are also directors or executive committee members, or even officers, of other corporations, and further, that sales personnel obviously come in direct contact with the public in general. If any such presumption were to be engaged in as to a corporation I would be of the opinion that the courts should presume the exact opposite of that suggested by the defendants; it should be presumed, in the absence of strong rebutting evidence, that legal files of a corporation have not been kept secret.

The final argument found in defendants' brief, stated succinctly, is that a corporation *should* have the privilege. With this argument I find much merit, it being my own considered judgment that due to the large and complex nature of modern corporate business transactions corporations should in fact be entitled to the attorney-client privilege. However, I am not a Court of sufficient importance or authority to create such a privilege by judicial ordination. Moreover, if this privilege is ever to be so created by a higher court I hope that it will also see fit to eliminate the problems inherent in attempting to apply the elements of a simple common law personal privilege to complex corporate transactions. In this regard I would like again to point out that it was these ridiculous problems of secrecy and "profanity" relative to an application of the privilege to a corporation that first caused me to extensively research the history and rationale behind the privilege. In the course of such research I found the state of the law to be chaotic resulting from the confusion created by varied attempts to apply a common law personal privilege in a method for which it was never intended to apply. I sincerely hope that in making these observations I do not appear imperious or usurpious. I merely feel a compelling duty not to be remiss in the performance of my judicial obligation to state the law as I find it.

If, as now suggested in defendants' second brief, a corporate right to the attorney-client privilege is to be created, and as I have already indicated this will have to be done by a court with greater authority than I possess or by the legislative branch, I once again express the hope that those who do see fit so to create the privilege will spell out the necessary elements applicable to a corporation making claim thereto and that in so doing they expressly exclude the common law requirement of secrecy. For if one were to hold that years of presumption as to a corporation's right to claim the privilege has in effect created the privilege, the common law requirement of secrecy impossible as to corporations would still be with us. As to positive action I might suggest that an attempt be made to bring this matter before the Judicial Conference Committee presently studying and considering possible amendments and even a re-writing of the Federal Rules of Civil Procedure. This same matter could also be brought to the attention of state legislative bodies, and in so doing relieve the judiciary of the impractical task of attempting to apply to corporations a privilege that was historically never intended to belong to them.

In accordance with the views herein expressed I now reiterate the legal conclusion set forth in my August 3rd Memorandum and Order. For purposes of permitting an interlocutory appeal as provided by 28 U.S.C. § 1292(b), I now state that I am of the opinion that this and the August 3rd Memorandum and Order involve "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and I do therefore hereby urge such an appeal. It is not my intention to stay proceedings in this case pending the Court of Appeals first accepting, and then ruling on this matter. I do anticipate that *my ruling will cause some delay in our pre-trial discovery procedures. However, my ruling as to the attorney-client privilege need not bring about a complete halt in further discovery. During the pendency of any appeal on this issue I will permit the defendants, or for that matter the plaintiff if the situation should arise, to properly withhold any document which presents a proper and reasonable issue as to the possible application of the attorney-client privilege. Needless to say, documents not affected by my attorney-client ruling need not and should not be withheld awaiting any appellate action.