**RADIANT BURNERS, INC.,** an Illinois corporation, Plaintiff-Appellee,

v.

**AMERICAN GAS ASSOCIATION,** Peoples Gas Light and Coke Company, et al., Defendants-Appellants.

No. 13960.

United States Court of Appeals Seventh Circuit.

June 28, 1963.

H. Templeton Brown, Chicago, Ill., Horace R. Lamb, New York City, Miles G. Seeley, Robert L. Stern, Patrick W. O'Brien, Chicago, Ill., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., LeBoeuf, Lamb & Leiby, New York City, of counsel, for American Gas Ass'n.

Frank F. Fowle, Chicago, Ill., Aloysius F. Power, Daniel Boone, Detroit, Mich., Herbert S. Wander, Chicago, Ill., Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., of counsel, for Delco Appliance Division of General Motors Corporation.

Justin A. Stanley, Robert F. Hanley, A. Daniel Feldman, Chicago, Ill., Isham, Lincoln & Beale, Chicago, Ill., of counsel, for Northern Illinois Gas Co., Marvin Chandler and E. D. Sheehan.

Clarence H. Ross, Roland D. Whitman, William J. Winger, Bruce J. McWhirter, Chicago, Ill., Ross, McGowan, Hardies & O'Keefe, Chicago, Ill., of counsel, for Peoples Gas, Light & Coke Co., Natural Gas Pipeline of America, Texas-Illinois Natural Gas Co., and Eskil I. Bjork, Remick McDowell, Bernard H. Wittman and Daniel Collins.

James B. O'Shaughnessy, William T. Hart, Chicago, Ill., Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., of counsel, for North Shore Gas Co. and Roy E. Jones.

Edward H. Hickey, James B. Moran, Chicago, Ill., Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., of counsel, for General Electric Co.

Thomas A. Reynolds, Edward L. Foote, Chicago, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel, for Heating & Air-Conditioning Division of Stewart-Warner Corporation.

Robert C. Keck, James G. Hiering, Val A. Weber, Jr., Chicago, Ill., MacLeish, Spray, Price & Underwood, Chicago, Ill., of counsel, for Bryant Mfg. Co., Division of Carrier Corporation.

Sidney Neuman, Gregory B. Beggs, Chicago, Ill., Pendleton, Neuman, Seibold & Williams, Chicago, Ill., of counsel, for Janitrol Heating & Air-Conditioning, a Division of Midland-Ross Corporation.

Brainerd Chapman, Chicago, Ill., Gallop, Climenko & Gould, Pritchard, Chapman, Pennington, Montgomery & Sloan, Chicago, Ill., of counsel, for Mueller Climatrol Division of Worthington Corporation.

James J. Gaughan, John L. Spalding, Chicago, Ill., for Autogas Co.

Irving W. Zirbel, Milwaukee, Wis., Porter, Quale, Porter & Zirbel, Milwaukee, Wis., Karl Williams, Rockford, Ill., of counsel, for Permaglass Division of A. O. Smith Corporation.

Lee A. Freeman, William J. Friedman, Victor Neumark, Richard F. Levy, Chicago, Ill., Edmund M. Morgan, Vanderbilt University Law School, Nashville, Tenn., Philip B. Kurland, Chicago, Ill., of counsel, for Radiant Burners, Inc.

Tom Arnold, Paul E. Harris, Houston, Tex., Arnold, Roylance & Harris, Houston, Tex., of counsel, for American Patent Law Ass'n.

Max Swiren, Chicago, Ill., amicus curiæ.

Bernard H. Sokol, Leo Arnstein, Chicago, Ill., for Chicago Bar Ass'n.

Peter Fitzpatrick, C. Malcolm Moss, Henry L. Pitts, Chicago, Ill., for Illinois State Bar Ass'n.

Albert E. Jenner, Jr., Philip W. Tone, Chicago, Ill., Sylvester C. Smith, Jr., Newark, N. J., President, American Bar Ass'n, William Poole, Wilmington, Del., Member, Board of Governors, American Bar Ass'n, of counsel, for American Bar Ass'n.

Before HASTINGS, Chief Judge, and DUFFY, SCHNACKENBERG, KNOCH,

**316**

CASTLE, KILEY and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

Radiant Burners, Inc., commenced this action on July 9, 1957 in the United States District Court for the Northern District of Illinois. Plaintiff is a manufacturer of conversion gas burners and gas furnaces.

Plaintiff charged defendants with conspiracy and combination in violation of Section 1 of the Sherman Act, 15 U.S. C.A. § 1, for the purpose of controlling the market and foreclosing plaintiff from competition. It sought recovery of treble damages and injunctive relief.

On March 11, 1959, on motion of defendants, the district court, Honorable Philip L. Sullivan presiding, dismissed plaintiff's second amended complaint for failure to state a cause of action. Plaintiff appealed. On December 3, 1959, we affirmed the judgment of dismissal. Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., 7 Cir., 273 F.2d 196.

Subsequently, the Supreme Court granted plaintiff's petition for certiorari. On January 16, 1961, the Supreme Court reversed the decision of this court and remanded the cause to the district court for further proceedings. Radiant Burners, Inc. v. Peoples Gas Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358.

Reference is made to the prior decisions of the Supreme Court and this court for a full statement of the nature of the cause of action and the issues on the merits of this case.

Upon remand, the cause was assigned to Honorable William J. Campbell, Chief Judge, who presided over the proceedings giving rise to the instant appeal.

Plaintiff filed a third amended complaint naming therein the present defendants in this action. The defendants now are American Gas Association (AGA), a membership corporation acting as a trade association for its members; three Chicago area utilities; [1] seven gas appliance manufacturers; [2] two pipeline companies; [3] and seven individuals [4] who are or have been officers or employees of the three utility defendants.

The three utilities, seven gas appliance manufacturers and two pipeline companies named as defendants are members of defendant AGA.

All defendants have filed answers denying the material allegations of the third amended complaint.

Commencing in the spring of 1961, all parties proceeded with discovery and have been participating in pretrial proceedings which are presently continuing. During the course of the discovery proceedings each party, pursuant to the direction of the district court, has made available to the opposing parties, upon request, unprivileged documents in its files.

During discovery a dispute arose between the parties concerning certain documents plaintiff wished to examine. Defendants claimed they were within the scope of the attorney-client privilege and not discoverable.

On April 27, 1962, this dispute was presented to the district court which resolved certain of the controversies, holding some of the documents to be within the privilege and others not. The court reserved its ruling on one group of documents which presented the question "with reference to officers or agents of a corporation and how far down the line

1. Peoples Gas Light and Coke Company, Northern Illinois Gas Company and North Shore Gas Company.

2. Bryant Manufacturing Company; Delco Appliance Division of General Motors Corporation; Janitrol Heating and Air-Conditioning, a division of Midland-Ross Corporation: Mueller Climatrol, Division of Worthington Corporation; Permaglass Division of A. O. Smith Corporation;

Heating and Air-Conditioning Division of Stewart-Warner Corporation and General Electric Company.

3. Natural Gas Pipeline of America and Texas-Illinois Natural Gas Co.

4. Eskil I. Bjork, Remick McDowell, Bernard H. Wittmann, Daniel E. Collins, Marvin Chandler, E. D. Sheehan and Roy E. Jones.

of the chain of command it [the attorney-client privilege] extends." Subsequently, another document was added to the group to which the ruling had been reserved.

The district court requested briefs on that issue and asked the parties to state their views on how the attorney-client privilege became applicable to corporations.

On August 3, 1962, the able district chief judge in an extended memorandum opinion, and admittedly without decisional precedent, stated that " * * * having after much study and consideration personally come to the point of questioning the application of the attorney-client privilege to a corporate client, I now suggest to the profession and adopt as the law of this case that a corporation is not entitled to make claim to the privilege * * *." Radiant Burners, Inc. v. American Gas Association, 207 F.Supp. 771, 773.

Subsequently, the district court permitted the filing of additional briefs by all parties "on the issue of a corporation's right to claim the attorney-client privilege." On October 11, 1962, Chief Judge Campbell, in a second extended memorandum opinion, reaffirmed his prior holding that the attorney-client privilege may not be claimed by a corporation and again ordered the documents in question delivered to plaintiff's attorney for inspection. Radiant Burners, Inc. v. American Gas Association, 209 F.Supp. 321.

The district court certified that his rulings of August 3 and October 11, 1962, involved "a controlling question of law as to which there is substantial ground for difference of opinion" for the purpose of permitting an interlocutory appeal pursuant to 28 U.S.C.A. § 1292(b) and urged that such appeal be granted. We granted defendants' application for leave to appeal under § 1292(b), supra.

The broad question for decision on this interlocutory appeal is whether the district court erred in holding that in a private antitrust action a corporation may not claim the attorney-client privilege to bar discovery of documents.

By leave of court, we permitted the filing of briefs as *amici curiae* by American Bar Association, Illinois State Bar Association, Chicago Bar Association and American Patent Law Association in support of the contentions of defendants-appellants and by Max Swiren in support of the contentions of plaintiff-appellee.

Because of widespread public interest and the importance to litigants generally in other pending litigation in the resolution of the question under consideration, the court, *sua sponte,* ordered this appeal heard by the court sitting *en banc.*

At the outset, it should be noted that this question was not raised by the parties but was brought into focus by the action of the district court itself. It appears from the record that in the initial stages of the proceedings relating to examination of documents by plaintiff's counsel, the right to claim the attorney-client privilege by the corporate defendants was not questioned by plaintiff or by the district court. The questions then presented to the court concerned the *scope* of the privilege.

In his opinion of August 3, 1962, Chief Judge Campbell stated with commendable frankness: "I myself and from their briefs all counsel herein, have taken for granted or presumed that a corporation is entitled to the privilege. Indeed, as previously noted herein I have granted it in this case." 207 F.Supp. at 772.

The rationale of the district court's holding on the merits of the question was that the privilege is not available to corporations because it is historically personal in nature and may be claimed only by natural persons. Further, that since secrecy or confidentiality is essential to a claim of the privilege in any event, it is not possible to maintain this relationship because of the possibility of disclosure to persons who constitute or are necessarily related to the corporate entity. Id. at 773–775.

Finally, in his opinion of October 11, 1962, Chief Judge Campbell, while conceding "it being my own considered judgment that due to the large and complex nature of modern corporate business transactions corporations should in fact be entitled to the attorney-client privilege," felt that "I am not a Court of sufficient importance or authority to create such a privilege by judicial ordination." He was convinced that without adequate decisional precedent or legislative authority he should not indulge extension of the privilege to a corporation. 209 F.Supp. at 325.

However, the district court quite properly took note that his ruling had no application to a claim of privilege by an attorney of his "work product," Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and that other valid claims of privilege exist to protect a corporation against unbridled discovery, i. e., "trade secrets" and "statutory protections." 207 F.Supp. at 775–776.

With deference to the ingenuity and judicial courage displayed by the district court in arriving at its conclusions, we find ourselves in disagreement with the broad holding "that a corporation is not entitled to make claim to the [attorney-client] privilege."

Dean Wigmore teaches that the history of the attorney-client privilege finds its origin in the reign of Elizabeth I, "where the privilege already appears as unquestioned." It arose from "a consideration for the *oath and the honor* of the attorney rather than for the apprehensions of his client." The doctrine that the privilege was that of the attorney rather than the client began to give way to a new concept in the 1700's. The "new theory looked to the necessity of *providing subjectively for the client's freedom of apprehension* in consulting his legal adviser. It proposed to assure this by removing the risk of disclosure by the attorney even at the hands of the law." By the middle of the 1800's, the privilege became substantially recognized as that

of the client "to include communications made, first, during any other litigation; next, in contemplation of litigation; next, during a controversy but not yet looking to litigation; and, lastly, in any consultation for legal advice, wholly irrespective of litigation or even of controversy." 8 Wigmore, Evidence § 2290 (McNaughton Rev. 1961).[5]

The policy of the privilege has been grounded on subjective considerations since the latter part of the 1700's. "In order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent. Such is the modern theory." 8 Wigmore § 2291.

There seems to be general acceptance of the four fundamental conditions recognized as necessary by Wigmore "to the establishment of a privilege against the disclosure of communications:

"(1) The communications must originate in a *confidence that they will not be disclosed.*

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

"(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

"(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.

"Only if these four conditions are present should a privilege be recognized.

"That they are present in most of the recognized privileges is plain enough; and the absence of one or more of them serves to explain why certain privileges have failed to obtain the recognition sometimes demanded for them. In the privilege for communications between attor-

5. Hereinafter cited as Wigmore.

ney and client, for example, all four are present, the only condition open to any dispute being the fourth." 8 Wigmore § 2285.

Finally, on the attorney-client privilege itself, Wigmore makes a summation "of the general principle so as to represent all its essentials" in the following sequence:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 Wigmore § 2292.[6]

We turn now to the application of this deep rooted privilege—recognized for more than a century as existing between attorney and client for the benefit of a natural person—to a corporate client.

The ruling of the district court under scrutiny here is without precedent. We find nothing improper in the action of the district court in raising the question. However, it is obvious to us that no litigant has heretofore thought there was merit enough in the proposition to warrant a challenge to the availability of the privilege to a corporation. That the privilege has been recognized as available to corporations for more than a century is not open to serious question.

Defendants point to a long line of American and English cases in which the attorney-client privilege has been recognized as applicable to corporations.[7] We need comment only on a few of them.

In United States v. Louisville & Nashville R. R., 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915), the Supreme Court

---

6. Reference is made to the collection of scholarly materials cited in footnote 1 to § 2292.

7. Federal cases: United States v. Louisville & Nashville R. R., 236 U.S. 318, 336, 35 S.Ct. 363, 59 L.Ed. 598 (1915); Schwimmer v. United States, 8 Cir., 232 F.2d 855 (1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52; Cole v. Hughes Tool Company, 10 Cir., 250 F.2d 924, 930–931 (1954), cert. denied, Ford v. Hughes Tool Co., 348 U.S. 927, 75 S.Ct. 339, 99 L.Ed. 726; Belanger v. Alton Box Board Co., 7 Cir., 180 F.2d 87, 93–94 (1950); Civil Aeronautics Board v. Air Transport Ass'n, D.C.D.C., 201 F.Supp. 318 (1961); United States v. Aluminum Company of America, D.C.N.D.N.Y., 193 F.Supp. 251 (1960); Wonneman v. Stratford Securities Co., D.C.S.D.N.Y., 23 F.R.D. 281 (1959); International Minerals & Chemicals Corp. v. Golding-Keene Co., D.C.W.D.N.Y., 162 F.Supp. 137 (1958); Ellis-Foster Company v. Union Carbide & Carbon Corp., D.C.D.N.J., 159 F.Supp. 917 (1958); United States v. American Radiator & Standard Sanitary Corp., D.C.W.D.Pa., 1958 Trade Cas. (CCH) ¶ 68,954 (1958); Commercio E Industria Continental v. Dresser Industries, D.C.S.D.N.Y., 19 F.R.D. 513 (1956); Georgia-Pacific Plywood Co. v. United States Plywood Corp., D.C.S.D.N.Y., 18 F.R.D. 463 (1956); Radio Corporation of America v. Rauland Corporation, D.C.N.D.Ill., 18 F.R.D. 440 (1955); Zenith Radio Corp. v. Radio Corp. of America, D.C.D.Del., 121 F.Supp. 792 (1954); United States v. Insurance Board of Cleveland, D.C.N.D. Ohio, 1954 Trade Cas. (CCH) ¶ 67,873 (1954); Willard C. Beach Air Brush Co. v. General Motors Corp., D.C.D.N.J., 118 F.Supp. 242 (1953), aff'd, 3 Cir., 214 F. 2d 664; Leonia Amusement Corp. v. Loew's Inc., D.C.S.D.N.Y., 13 F.R.D. 438 (1952); Shawmut, Inc. v. American Viscose Corp., D.C.D.Mass., 12 F.R.D. 488 (1952); Stockard S. S. Co. v. Aetna Ins. Co., D.C.S.D.N.Y., 16 Fed.Rules Serv. 34.42, Case 2 (1952); A. B. Dick Co. v. Marr, D.C.S.D.N.Y., 95 F.Supp. 83, 102 (1950), appeal dismissed, 2 Cir., 197 F.2d 498, cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680; United States v. United Shoe Machinery Corporation, D.C.D.Mass., 89 F.Supp. 357 (1950); Phillips v. Hickey, D.C.S.D.N.Y., 14 Fed. Rules Serv. 36a.27, Case 1 (1950); In re Associated Gas & Electric Co., D.C. S.D.N.Y., 59 F.Supp. 743 (1944); E. W. Bliss Co. v. Cold Metal Process Co., D.C.N.D., Ohio, 1 F.R.D. 193 (1940); Lalance & Grosjean Mfg. Co. v. Haberman Mfg. Co., C.C.S.D.N.Y., 87 F. 563 (1898); Edison Electric Light Co. v. United States Electric Lighting Co., C.C. S.D.N.Y., 44 F. 294 (1890); Western Union Tel. Co. v. Baltimore & Ohio Tel. Co., C.C.S.D.N.Y., 26 F. 55 (1885).

State cases: Holm v. Superior Court, 42 Cal.2d 500, 267 P.2d 1025, 268 P.2d 722 (1954); Fire Ass'n v. Flemming, 78 Ga. 733, 3 S.E. 420 (1887); Schmitt v.

extended such recognition. In that case the Government did not contest the right of a railroad corporation to invoke the attorney-client privilege. In referring to this claim of privilege the Court said:

"The desirability of protecting confidential communications between attorney and client as a matter of public policy is too well known and has been too often recognized by text-books and courts to need extended comment now. If such communications were required to be made the subject of examination and publication, such enactment would be a practical prohibition upon professional advice and assistance. Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U.S. 457, 458 [24 L.Ed. 251]. And see the comments of this court in Blackburn v. Crawfords, 3 Wall. 175, 192 [18 L.Ed. 186]." Id. at 336, 35 S.Ct. at 369.

The fact that in the two cases cited by the Court the privilege was claimed by non-corporate clients indicates to us the Supreme Court was not concerned with the corporate or non-corporate identity of the client.

One more reference to pre-Radiant Burners decisions will suffice to indicate the tenor of such cases. In A. B. Dick Co. v. Marr, D.C.S.D.N.Y., 95 F.Supp. 83 (1950), appeal dismissed, 2 Cir., 197 F.2d 498, cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680, a patent infringement action, after reviewing earlier authorities relevant to the reasons for the privilege, Judge Medina, in sustaining its exercise by a corporation, concluded:

"Since these early statements the necessity of protecting the attorney-client relationship has become even more apparent; the legal rights and duties of large corporations and those who dispute with them would not be susceptible of judicial administration in the absence of lawyers, nor, in the absence of the privilege could lawyers properly represent their clients. I am, frankly, hesitant to do anything which would contribute to the undermining of the protection afforded by the time-honored rule which excludes from evidence such confidential communications." 95 F.Supp. at 102.

Three recent district court cases have expressly rejected the broad holding in Radiant Burners. In City of Philadelphia v. Westinghouse Electric Corp., D.C. E.D.Pa., 210 F.Supp. 483 (1962), Judge Kirkpatrick stated: "Turning to the claim asserted in behalf of the corporation, preliminarily I may say that I find myself unable to follow Judge Campbell's decision to the effect that the attorney-client privilege is not available to corporations. His opinion is supported by a good deal of history and sound logic, but the availability of the privilege to corporations has gone unchallenged

Emery, 211 Minn. 547, 2 N.W.2d 413, 139 A.L.R. 1242 (1942); Stewart Equipment Co. v. Gallo, L. Div., 32 N.J.Super. 15, 107 A.2d 527 (1954); Russell v. Second Nat. Bank of Paterson, Ct.Err. & App., 136 N.J.L. 270, 55 A.2d 211 (1947); Pressman v. C. B. S., Inc., 133 (51) N.Y.L.J. 7, Col. 4M (Spec. Term N.Y. Co., 3-15-55); Stahl v. Federated Meat Corp., 121 (114) N.Y.L.J. 2102, Col. 3F (Spec. Term Queens Co., 6-13-49); Myles E. Rieser Co. v. Loew's, Inc., 194 Misc. 119, 81 N.Y.S.2d 861 (1948); L. Michel Plumbing & Heating Corp. v. Randall Avenue Theatre Corp., 179 Misc. 998, 39 N.Y.S.2d 830 (1943); In re Hyde, 149 Ohio St. 407, 413, 79 N.E.2d 224, 227 (1948); Ex parte Schoepf, 74 Ohio St. 1, 77 N.E. 276, 6 L.R.A.,N.S., 325 (1906); Davenport Co. v. Pennsyl-

vania R. Co., 166 Pa. 480, 31 A. 245 (1895); Robertson v. Commonwealth, 181 Va. 520, 25 S.E.2d 352, 146 A.L.R. 966 (1943).

English cases: Mayor & Corp. of Bristol v. Cox, 26 Ch.D. 678, 682 (1884); Southwark & Vauxhall Water Co. v. Quick, 3 Q.B.D. 315 (1878); Friend v. London, Chatham & Dover Ry., 2 Ex.D. 437 (1877); Anderson v. Bank of British Columbia, 2 Ch.D. 644 (1876); Pacey v. London Tramways Co., 2 Ex.D. 440 (1876); Wilson v. Northampton & Banbury Junction Ry., 14 L.R.Eq. 477 (1872); Cossey v. London Brighton & South Coast Ry., 5 C.P. 146 (1870); Nias v. Northern & Eastern Ry., 3 My. & C. 355, 40 Eng.Rep. 963 (Ch.1838); Bolton v. Corporation of Liverpool, 1 My. & K. 88, 39 Eng.Rep. 614 (1833).

so long and has been so generally accepted that I must recognize that it does exist." Id. at 484.

In American Cyanamid Company v. Hercules Powder Company, D.C.D.Del., 211 F.Supp. 85 (1962), a patent case, Judge Wright, in a well documented review of the development of the privilege and its application to a corporation, took note of Radiant Burners in a footnote, as follows:

"12. In a recent case, Chief Judge Campbell held that the privilege could not be raised by a corporation. Radiant Burners, Inc. v. American Gas Association et al., 207 F.Supp. 771 (U.S.D.C.N.D.Ill.1962). The prongs of his decision were that the privilege was fundamentally personal in nature, that it is difficult, if not impossible to determine who speaks for the corporation, and that the primary element of secrecy, ordinarily attendant the privilege, could not be had. The court believes this to be an unjustifiable restriction of the immunity. The basis for the privilege is the importance of increasing the effectiveness of attorneys by encouraging full disclosure by the client. It seems clear that disclosure by corporations is as important as by individuals. In reality the rule articulated by Judge Campbell penalizes the strong and favors the weak, but strength is quite irrelevant to the policy of the privilege. To the extent that the learned Judge recognizes that application of the immunity to the corporation is problematical, I concur. This Court does not feel a corporation should be able to insulate vital facts by using the privilege in a perverting manner. However, in my opinion, the proper approach lies in tailoring the ordinary rules to the peculiar cloth of this legal entity. Cf. Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 483 (D.C., 1962)." Id. at 88.

In Garrison v. General Motors Corporation, D.C.S.D.Cal., 213 F.Supp. 515, 521 (1963), a patent case, Judge Crary stated that he was not in accord with the conclusion announced in Radiant Burners. His decision was primarily concerned with the scope of the privilege held available to corporate clients.

Law review writers, like our courts, have recognized the availability of the privilege to corporations. They have assumed (before Radiant Burners) that the privilege exists in favor of corporations. Their concern has focused on the scope of the privilege and the problems inherent in its application to corporations.[8] The Northwestern University Symposium is the most comprehensive treatment of the entire subject matter before us that has been called to our attention. We commend its study to those interested in problems related to this question. It concludes, *inter alia*, that since the privilege does not exist out of deference to any personal right, but rather because of policy considerations designed to facilitate the workings of justice, it is fully applicable in the broad sense to corporations. 56 Nw.U.L.Rev. 235, 241 (1961).

The ruling in Radiant Burners has provoked a rash of student notes in law reviews.[9] It is interesting to note that

---

8. Agent's Reports and the Attorney-Client Privilege, 21 U.Chi.L.Rev. 752 (1954); Simon, The Attorney-Client Privilege as applied to Corporations, 65 Yale L.J. 953 (1956); A Critical Examination of Some Evidentiary Privileges: A Symposium; The Lawyer-Client Privilege: Its Application to Corporations, The Role of Ethics, and Its Possible Curtailment, 56 Nw.U.L.Rev. 235 (1961).

9. 57 Nw.U.L.Rev. 596 (1962); 15 Ala.L. Rev. 255 (1962); 37 N.Y.U.L.Rev. 955

(1962); 61 Mich.L.Rev. 603 (1963); 76 Harv.L.Rev. 655 (1963); 49 Va.L.Rev. 610 (1963); 37 Tul.L.Rev. 332 (1963); 111 U.Pa.L.Rev. 679 (1963); 51 Geo. L.J. 399 (1963); 4 Boston College Industrial and Commercial L.Rev. 416 (1963); 17 Ark.L.Rev. 96 (1963). Contra: 51 Ill.B.J. 666 (1963).

See Miller, The Challenges to the Attorney-Client Privilege, 49 Va.L.Rev. 262 (1963); Haight, Keeping the Privilege Inside the Corporation, 18 Bus.Law. 551

all but one of those called to our attention thus far have disagreed with the broad holding of the district court in this case. There has been general agreement that the purpose of the privilege is to facilitate the administration of justice by encouraging full disclosure by the client to its attorney. Since the privilege encourages disclosure, rather than destroy the privilege they would have the courts examine each document to determine the applicability of the privilege in light of its underlying rationale. Further, there seems to be a common conclusion that there can be no proper analogy drawn to the privilege against self-incrimination. There is some criticism of the failure to take note of the small, family or one-man corporation.

The American Law Institute published its Model Code of Evidence in 1942.[10] Rule 209 states: "As used in Rules 210 to 213, (a) 'client' means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative, for the purpose of retaining the lawyer or securing legal service from him in his professional capacity * * *."

The Uniform Rules of Evidence contain the same definition of the lawyer-client privilege found in the Model Code, defining "client" as including a "corporation or other association." Rule 26(3).[11] In his October 11, 1962 opinion, Chief Judge Campbell takes notice of the Model Code and the Uniform Rules and concludes "that both works were intended to set forth what the law *should be* and not necessarily what the law is," and expressed his agreement with that purpose. 209 F.Supp. at 323. Our view

is that the scholars were giving expression to their view of the law as they found it.

Wigmore points out that the privilege has been embodied in statutes in many jurisdictions, and collects them in an extended footnote. 8 Wigmore § 2292, fn. 2, at 555–560. The privilege is defined generally in terms of the "client" or the "party." Reference is further made to the same effect in rules of court having the force and effect of law.

■■ Plaintiff argues that the privilege developed before the utilization of the corporation as a business entity and that it finds its origin in terms of a personal immunity. We believe this is a misconception of the principle underlying the privilege. Our conclusion is that the privilege is that of a "client" without regard to the non-corporate or corporate character of the client, designed to facilitate the workings of justice.

■ It is argued that because corporations have been denied the protection of the constitutional privilege against self-incrimination, United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), because of their impersonal character, that by analogy they are to be denied the protection of the attorney-client privilege. We shall not attempt to reconcile the scholarly divergence of views on this proposition. In White, the Supreme Court was moved to its conclusion because it found the constitutional privilege against self-incrimination to be essentially personal in character, "applying only to natural individuals." Id. at 698, 64 S.Ct. at 1251. It is our view, as we have previously stated, that the attorney-client privilege derives from a regard for the rights of a client,

(1963); Gardner, A Re-evaluation of the Attorney-Client Privilege, 8 Vill.L.Rev. 279 (1963).

10. Defendants note that the Committee on Evidence included Judges Learned Hand, A. N. Hand, Patterson and Wyzanski, and Dean McCormick. Dean Wigmore was Chief Consultant. Professor Edmund M. Morgan (of counsel on the brief for plaintiff-appellee in the instant case) was Re-

porter. We do not assume that Professor Morgan is now or at that time was sympathetic to the views of defendants-appellants here.

11. The National Conference of Commissioners on Uniform State Laws, in cooperation with the American Law Institute Committee, issued the Uniform Rules of Evidence in 1953.

personal or impersonal in character, fostering a social policy concerned with facilitating the workings of justice.

Plaintiff urges that the benefits to society through the application of the privilege are outweighed by the superior benefits of full disclosure. There is eminent authority in support of this view. Professor Morgan in his Foreword to the Model Code makes this point. Plaintiff cites McCormick, Handbook on Evidence (1954) and Radin, The Privilege of Confidential Communication between Lawyer and Client, 16 Calif.L.Rev. 487, 491 (1928) to the same effect. These are in essence forceful arguments urged against recognition of the attorney-client privilege in any form. Plaintiff argues: "It would seem a universally accepted proposition that the dubious value of the attorney-client privilege requires its contraction rather than expansion. Most of the commentators agree that the doctrine even as applied to individuals should be abolished and would be, but for the hue and cry that lawyers would raise about such denigration of their prime status symbol."

Plaintiff follows this thought to urge that the privilege be contracted rather than expanded to include corporations. We do not regard the resolution of the question before us as requiring an expansion of the privilege. We think it already is in existence and has been for more than a hundred years. We cannot agree that the proper remedy is annihilation. If, on the other hand, a change in social policy dictated by modern liberalization of discovery procedures is in order, the cure would seem to lie in the area of accommodation of the privilege to modern business practice.

■ It is our considered judgment that based on history, principle, precedent and public policy the attorney-client privilege in its broad sense is available to corporations, and we so hold.

■ Giving recognition to what we believe is already an established rule of law, requires the acknowledgment that it is an obstruction to full and free dis-

covery. We have chosen to follow Wigmore, with whom several noted scholars have disagreed. We, therefore, quote his admonition:

"Nevertheless, the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. Even the answers to Bentham's argument concede that the privilege is well founded in its application to a certain proportion of cases. It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 Wigmore § 2291, at 554, citing Foster v. Hall, 12 Pick. 89, 29 Mass. 89, 97 (1831), ("The rule of privilege, having a tendency to prevent the full disclosure of the truth, ought to be construed strictly").

The district court has asked us to spell out the answers to questions relating to confidentiality in the corporate chain of command. We are asked "to apply the elements of simple common law personal privilege to complex corporate transactions." With due respect, we must decline the invitation to decide, in a vacuum, the limitations to be imposed in the application of the privilege by a corporation. If there be a place for a "guide-lines" opinion at our court level, this is not it.

■ However, some things seem well settled. The attorneys' work-product rule announced in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), remains unimpaired and is something separate and apart from the attorney-client privilege.

Where a corporation is the client it must act through its officers and agents. The character of the corporate organization and management will vary from the small, family type, one-man variety to the giant with its thousands of em-

ployees. The problems concerning confidentiality will necessarily vary accordingly. Judge Wright took note of these difficulties in American Cyanamid Company v. Hercules Powder Company, D.C. D.Del., 211 F.Supp. 85, 88 (1962). Judge Leahy competently met the problem in Zenith Radio Corp. v. Radio Corp. of America, D.C.D.Del., 121 F.Supp. 792 (1954), as did Judge Wyzanski in United States v. United Shoe Machinery Corporation, D.C.D.Mass., 89 F.Supp. 357 (1950). Further discussion of these problems is to be found in 56 Nw.U.L. Rev. 235, 241 (1961), supra and 65 Yale L.J. 953 (1956), supra.

There is no reason to believe that the required confidentiality cannot properly be maintained within the corporate family. It can just as readily be dissipated. These matters will all have to be resolved on a case-by-case basis. No one is wise enough to decide them in advance.

■■ Certainly, the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure. Likewise, it seems well settled that the requisite professional relationship is not established when the client seeks business or personal advice, as opposed to legal assistance.

In balancing the competing goals of the free and unobstructed search for the truth with the right and absolute necessity for confidential disclosure of information by the client to its attorney to gain the legal advice sought thereby, the courts will realize that they are not dealing with a blanket privilege. The limitation surrounding any information sought must be determined for each document separately considered on a case-by-case basis. If new limitations on the application of the privilege are to be established they must come through the decisional process. Trial courts have developed the law in this fashion through-

out the years and will continue to do so.

■ A corporation is entitled to the same treatment as any other "client"— no more and no less. If it seeks legal advice from an attorney, and in that relationship confidentially communicates information relating to the advice sought, it may protect itself from disclosure, absent its waiver thereof.

The decisions and order appealed from are reversed.[12]

Reversed.

KILEY, Circuit Judge (concurring). I concur.

Originally, in the attorney-client relationship, the client was a natural person, as were the patient, penitent, and spouse in the other pertinent relationships where the privilege has been recognized. But, as client, the natural person undoubtedly sought advice about matters other than his personal private affairs, which are so intimately involved in the other relationships.

The very fact of the attorney-client relationship connotes, among other mundane things, legal advice about economic affairs. The early relationship between the individual businessman and his attorney was personal in the sense that a natural person was the client, but generally not in the sense that the intimate private affairs of the penitent, patient or spouse are personal.

The corporation does not itself have attributes which give rise to the need of intimate advice, in the area of personal privacy, for which the natural person turns to confessor, doctor or spouse. It does, however, have an economic nature because of which it needs legal advice in the same way that the early individual needed, and his contemporary counterpart needs, that advice.

The corporation, as well as the individual, in seeking that advice, may of necessity communicate through its representa-

---

**12.** Upon completion of oral argument, Circuit Judge SCHNACKENBERG took no part in the consideration or decision of this appeal.

tives secrets about its conduct in business. And in these necessitous circumstances, no good reason exists why the impartial administration of justice should not afford the corporation the protection of the privilege in appropriate cases.

In this light, I agree with the conclusion of Judge Hastings that the attorney-client privilege in its broad sense is available to corporations.

Since the defendant Association, a corporation, is a client, there is no reason, at this point, to exclude it from the holding of this court. It may have secrets which should be shielded from public gaze. On the other hand, it may be that, narrowly confined, 8 Wigmore, Evidence, 554 (McNaughton rev. 1961), the privilege cannot logically be extended to documents entrusted to the Association by its member corporations which, in turn, are entrusted by it to its attorney.