## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF VERMONT.

---

### BENNINGTON COUNTY, FEBRUARY TERM,
### A. D. 1801.

---

*ENOCH WOODBRIDGE*, Chief Judge.
*LOTT HALL,* } *Assistant Judges.*
*NOAH SMITH,* }

---

STATE *against* TRUMAN SQUIRES, Esquire.

SPECIAL rule.

*David Fay*, State Attorney for said County, here moves the Court for a special rule to be served upon *Truman Squires*, attorney in this Court, to shew cause, if any he have, why he should not forthwith deliver to the grand jurors, duly impanelled, sworn, and charged by this Court, at this now term, diligently to inquire after and true presentment make of all felonious breaches of the law, for their inspection and examination, two certain promissory notes (which he holds in his hands as attorney to one *Thomas Mal-*

Upon a rule to shew cause, the Court will not order an *attorney* of the Court to deliver to the State Attorney, for the inspection of the Grand Jury, promissory notes suggested to have been forged, which had been delivered to the attorney in the common course of business by his client, suspected of committing the forgery.

*lery*,) for the sum of twenty-five dollars each, pur-
porting to have been made by one *Silas Hubbel*, to
the said *Thomas Mallery ;* the said *Mallery* having
been recognised by Mr. Justice *Sexton*, of *Man-
chester*, in this County, to appear and answer in this
Court touching such things as might be charged
against him for the falsely and feloniously forging and
making the said notes ; the Grand Jurors having the
same now under their consideration.

                    *David Fay*, State Attorney.
Rule granted.

And now, on the same day of the term, Mr. *Squires*
shewed cause, and observed—

That he felt himself delicately situated between
the duties due to his client and the government. As
an attorney of the Court he had a reputation to pre-
serve, which must be principally grounded upon his
unshaken attachment to the interests of his client.
As a citizen he owed duties to the government,
which he at all times esteemed it incumbent upon
him promptly to discharge. The report that as an
attorney he had wantonly disclosed the secrets of his
client, and unnecessarily exposed him to public pro-
secution, and perhaps infamous punishment, would
be painful. But the very imputation that, in defiance
of his duties as a good citizen, he has suppressed evi-
dence of crime, and sheltered the accused from pub-
lic prosecution, might sully his character as an offi-
cer of the Court, and an honest man. As the point
whether he should disclose the papers in question to
the Grand Jury, could not be decided by considera-
tions merely moral or honourable, but by considera-

tions of constitutional and legal propriety, he had hesitated to decide for himself, and had suggested to the State Attorney the measure of filing this rule; and confessed, that he anticipated from the decision of the Court, to which he should cheerfully submit, a direction to duty, and a sanction for his conduct.

State
v.
Squires.

At present it behoved him, as attorney to *Thomas Mallery*, to shew cause why the rule should not be made absolute. He conceded that he held in his possession certain promissory notes of the purport of those mentioned in the rule, and stated that they were delivered to him by *Thomas Mallery;* that in the ordinary course of the business of his office, he should have holden himself as accountable to *Mallery* only for the control of them, to whom he considered himself still attorney.

He then argued from the intimacy subsisting between persons in the relation of attorney and client, which in many cases amounted to almost personal identity in the contemplation of law. This intimacy, like that between husband and wife, was highly respected in judicial proceedings. When an attorney is sworn to testify in a cause in which he is or has been engaged as counsel, the very form of the oath administered contained an exception of such matters as have been communicated to him in confidence by his client. That the bill of rights prefixed to our constitution of government, declares, " that in all prosecutions for criminal offences, a person cannot be compelled to give evidence against himself;" that this clause in the bill of rights was one of the distinguishing marks between a despotic and free government, and should not be shaken by any considera-

*Vermont* Stat. vol. 1. p. 33, art. x.

*State v. Squires.*

*Vermont Stat. vol. 1. p. 33. art. x.*

tions of present expediency. That by the same bill of rights, any person accused of a crime hath a right to be heard by counsel. But how shall the accused venture to instruct his counsel in the nature of his defence, if the papers communicated in the confidence of a private consultation, might, in the course of the prosecution, by the order of the Court, be extorted from his counsel, and used as evidence against him? Would not this in most cases defeat the bill of rights?

Mr. *Squires* then observed, that the clauses read from the bill of rights are but in affirmance of the common law; and cited *Burrow's Reports,* vol. 3. p. 1687. *Rex* v. *Dixon.*

The State Attorney, in reply, observed, that he held the bill of rights in high respect; but he could not refrain from noticing, that the Legislature had considered that the clause which sheltered a person from being compelled to give evidence against himself, did not admit of so extensive a construction as that contended for by Mr. *Squires.* Provision had been made for search warrants in the case of stolen goods; and in the case of counterfeited coins, a person *may be compelled* to give evidence against himself. The act declares, " that every Justice of the Peace within this State is hereby authorised and empowered, and it is hereby made his duty to seize and take into custody every piece of such false, forged, altered or counterfeited coin, which he shall see, observe, or have knowledge of, and the same shall retain, entering the name of the person or persons from

*Vermont Stat. vol. 1. p. 334.*

whom he took the same, and at his discretion to cause the person or persons from whom he took such coin to come before him to be examined in the premises ; and to administer an oath to such person or persons, to declare from whom he or they received such coin ; and *proceed in his inquiries,* in manner aforesaid, for the detection of the author of such mischief, so far as he in his discretion shall think necessary." If the progress of the magistrate's inquiries leads to the felon himself, he will be compelled to give evidence against himself, and that under oath. But be that as it may, he thought it his duty, as public prosecutor, to pursue every legal course to bring offenders to condign punishment. If the Court considered this demand upon Mr. *Squires* not warranted by law, he should cheerfully submit to the decision.

WOODBRIDGE, Chief Judge. The attorney in this case must be considered as the keeper of these notes for his client. If so, in contemplation of law they are in the possession of *Thomas Mallery.* I doubt the propriety of ordering papers thus situated out of his possession for the purpose of making use of them against him. It is true there are search warrants for the discovery of stolen goods ; and magistrates who may seize base coin, are authorised to examine persons through whose hands it may have passed, under oath. But these are *statute* provisions, which do not controvert the bill of rights. There are no instances of warrants to search for papers correctly issuable at common law.

If *Mallery* makes use of these notes to support an action, the Court before whom such action is tried may and ought to direct them to be stopped. The case in *Burrows* I conceive to be in point.

HALL, Judge. I consider the only power the Court have over such papers, while in possession of the party or his attorney, whom I consider to be one in contemplation of law, must be when they are attempted to be exhibited in evidence in this Court. I do not think we have any more power over these notes than we have over any other private papers which Mr. Attorney may suggest are in the custody of *Mallery*, and which he may esteem requisite to maintain a prosecution against him. I am for discharging the rule.

SMITH, Judge. I am of the same opinion.

Rule discharged.

*D. Fay*, State Attorney, for the State.
*Truman Squires, pro se.*