Shaw C. J.
afterwards drew up the opinion of the Court. Several exceptions were taken at the trial, to the decisions of the judge who tried the cause, which being presented by the report, are now for the consideration of the Court.
1. That upon proof of the execution and delivery of the deed, by the demandant, it was ruled that, although the same testimony, which proved the execution and delivery of the deed, proved that the grantor was in failing circumstances, still that the burden of proof was upon the tenants, to impeach the deed for want or inadequacy of consideration, or otherwise, and to show that it was made with an intent to delay, defeat or defraud the creditors of the grantor. This rule, we think, was correct. The deed itself importing the payment of an adequate consideration, the same evidence which proved the execution and delivery of the deed, so as to make it take effect as a deed, proved the payment of the consideration. This evidence of payment was conclusive between the parties, and prima, facie as against creditors coming in by an after attachment to defeat this title. It makes no difference, as to the point of burden of proof, that the evidence, to rebut the demandant’s prima, facie title, comes in part or wholly from the demandant’s witnesses, on cross-examination. This does not change the burden of proof. The tenants may rely on such evidence solely, or strengthen it by further evidence adduced on their own part; still the burden of proof is upon them, to prove the deed fraudulent, and it is a question for the jury, on the whole evidence, to determine whether it is fraudulent, so as to rebut the demandant’s legal title.
In respect to the next exception, the Court are oí opmion, that the testimony of Mr. Robinson was rightly rejected. Mr. Robinson very properly submitted it to the Court to determine, upon the facts disclosed, whether he should answer or not, having no wish either to volunteer or to withhold his testimony. The rule in such case is, that the privilege of confidence is the privilege of the client, and not of the attorney, and therefore whether the facts shall be disclosed or not, must depend upon the just application of the rule of law, and not upon the will of the witness.
Mr Robinson states that he has no knowledge of the sub *94 ject, except what he derived from the communications of Nehemiah Foster, the grantor ; that he was in fact an attorney at law, admitted and sworn ; that he announced himself to Foster as such, before the conversation commenced; and that he was consulted in that capacity, and gave his advice in that capacity. That no fee was paid, is immaterial; the legal obligation to pay a quantum meruit being in this respect as effectual a retainer as an actual payment. Although the general rule, that matters communicated by a client to his attorney, in professional confidence, the attorney shall not be at any time afterwards called upon or permitted to disclose in testimony, is very well established, still there is some difference of opinion as to its precise limits.
Some points seem clearly settled by the cases. It is confined strictly to communications to members of the legal profession, as barristers and counsellors, attorneys and solicitors, (Wilson v. Rastall, 4 T. R. 759,) and those whose intervention is necessary to secure and facilitate the communication between attorney and client, as interpreters, (Du Barre v. Livette, Peake’s Rep. 78,) agents, (Perkins v. Hawkshaw, 2 Stark. Rep. 239,) and attorneys’ clerks. Taylor v. Foster, 2 Carr. & P. 195.[1]
It seems also well established, that the matter thus disclosed in professional confidence cannot be disclosed at any future time, nor can it be given in evidence in another suit, although the client, from whom the communication came, is no party and has no interest in it. Rex v. Withers, 2 Campb. 578.
And it is the well known modification of the rule, that the privilege of confidence is that of the client and not of the attorney, and therefore the latter shall not be permitted to disclose it by his testimony, if ever so much inclined to do so, unless released from the obligation by the client. Bul. N. P. 284 ; Petrie’s case, cited 4 T. R. 759.
But the point alluded to, about which some difference of opinion has existed, is this; whether the subject matter to *95 which the privilege of confidential communication extends, is confined to those communications, which are made to counsel and attorneys, in relation to the prosecution or defence of a suit at law, existing or contemplated ; or whether it embraces other cases, when a person has occasion to avail himself of the superior knowledge and skill of a professional man, in understanding his legal rights, and when in order to obtain that information, he is under the necessity of stating facts which he has a right to keep in strict secrecy.
I am not aware that any of the earlier cases have turned upon this distinction, or that the point has been directly made till recently.
In the text writers, the rule is laid down in terms broad enough to include other occasions when parties have need of the aid of a professional adviser, and one is applied to in that character and for that purpose.
Bac. Abr. Evidence, «8 3. “ It seems agreed that counsellors, attorneys or solicitors are not obliged to give evidence, or to discover such matters as come to their knowledge in the way of their profession ; for by the duty of their offices, they are obliged to conceal their client’s secrets, and every thing they are intrusted with is sub sigillo confessoris ; for,” &c.
Phillips on Evidence, (6th ed.) 131. “Confidential communications between attorney and client are not to be revealed at any period of time, — not in an action between third persons, — nor after the proceeding, to which they referred, is at an end,—nor after the dismissal of the attorney. The privilege of not being examined to such points as have been communicated to the attorney while engaged in his professional capacity, is the privilege of the client, not of the attorney, and it never ceases. ‘ It is not sufficient to say, the cause is at an end, the mouth of such a person is shut for ever.’ .Butter J. 4 T. R. 759. If the party waive his privilege, the witness may of course be examined.”
I will briefly allude to the cases in which contrary doctrines upon this point have been held.
In Robson v. Kemp, at nisi prius, 4 Esp. R. 235, and 5 Esp. R. 52, it was ruled by Lord Ellenborough-, that an attorney employed by consent of two parties in preparing a deed *96 from one to the other, cannot be examined as to what he so became informed of, in preparing the deed, in an action by the assignees of one against the other, suggesting fraud in the conveyance.[1]
Cromack v. Heathcote, 2 Brod. & B. 4; S. C. 4 Moore’s R. 357. In this case it was held that communications made by a party to an attorney are confidential, although they do not relate to a cause existing or in progress, at the time they were made ; and where an attorney was applied to by a father, to prepare a deed by which his property was to be assigned to his sons, and he stated there was no consideration, though the attorney refused to prepare it, and it was afterwards drawn by another, it was held that such attorney was precluded from giving evidence of that fact. C. C. P. Easter Term 1820.
But in Williams v. Mudie, 1 Carr. & P. 158, it was ruled by Abbott C. J. at nisi prius, that whatever is communicated for the purpose of bringing or defending an action is privileg ed, but not otherwise. S. C. reported Ryan St Moody, 34, Hilary Term 1824. See the note in Ryan St Moody, 35.
Wadsworth v. Hamshaw, 2 Brod. St B. 5, note; 4 Moore, 358. The same point was ruled by Abbott C. J. at nisi prius, March 1829.
Broad v. Pitt, 3 Carr. St P. 518. In this case it was ruled , by Best C. J. at nisi prius, that no communications made to an attorney are privileged, but such as are made for the purpose of the attorney’s either commencing or defending a suit.
These cases are certainly of great weight in point of authority, and although they are decisions at nisi prius, would be deserving of much consideration, and, if they stood alone, would seem almost decisive. But it is obvious that they are directly opposed to the nisi prius decisions of Lord Kenyon, and to the case of Cromack v. Heathcote, which was decided by the Common Pleas, upon argument. The nisi prius case *97 of Wadsworth v. Hamshaw was alluded to, not having then been reported, and Dallas C. J. says, “ One is staggered at first on being told that there are decided cases which seem at variance with first principles the most clearly established, &c. k and I know of no such distinction as that arising from the attorney being employed or not employed in the cause. A client goes to give instructions touching a deed, and the communication must be deemed confidential, as between attornev and client, though the attorney refused the employment.” And Richardson J. says, “ Suppose the case of an attorney consulted on the title to an estate, where there was a defect in the title, can it be contended that he would ever be at liberty to divulge the flaw ? I never heard of the rule being confined to attorneys employed in the cause.”
Bramwell v. Lucas, 4 Dowl. & Ryl. 367 ; S. C. 2 Barn. & Cressw. 745. A communication made by a client to his attorney, to obtain information as to a matter of fact and not for the purpose of asking his legal advice, is not privileged. A trader, at the suggestion of his attorney, having called a meeting of creditors, inquired of his attorney, whether he could safely attend a meeting of the creditors, and the attorney advised him to stay at his office, till he (the attorney) could ascertain whether the creditors would give him a safe conduct, and he did stay there several hours to avoid arrest. The object was to show this fact as an act of bankruptcy, and the question was whether this was a privileged communication. It was decided that it was not, expressly upon the ground, that the object of the question was to get information as to a matter of fact, whether any arrangement had been made to protect the client, and not for the purpose of obtaining the legal advice or opinion of his attorney. This certainly implies, that if the communication had been made with a view to obtain legal advice as to his rights, though it had no relation to prosecuting or defending a cause, it would have been privileged.
And Abbott C. J. said, “ Whether the privilege extends to all confidential communications between attorney and client or not, there is no doubt that it is confined to communications to the attorney, in his character of attorney. A question for legal advice may come within the description of a confidential *98 communication, because it is part of the attorney’s duty to give legal advice ; but a question for information as to a matter of fact, &c.' where the character or office of an attorney has not been called into action, has never been held within the protection, and is not within the principle upon which the privilege is founded.”
Parkhurst v. Lowten, 2 Swanston, 216, before Lord Chancellor Eldon in 1819. It was a case involving inquiries respecting the sale of an advowson charged to have been simo niacal, and of course subjecting the parties to penalties. The defendant had declined answering certain questions, on the ground that it would implicate himself, by involving him in the crime of simony. Godfrey, an attorney, was called to answer, interrogatories as a witness, and objected, as having been professionally concerned in the transactions which the bill characterized as an offence. From this statement I understand that he had been consulted as to the legal character of the transactions, not that he had been concerned or retained in any suit or cause pending or contemplated. The chancellor says, “ Godfrey stands in a very different situation (from the party), insisting, not that the disclosure would tend to criminate himself, but that it would consist of matter of which he could obtain a knowledge only by the confidence of his employer. The privilege which he claims, is the privilege, not of the attorney, but of the client, and is founded on this consideration,, that there would be no safety in dealing with mankind, if persons employed in transactions were compelled to state that which they have learned only by this species of confidence.But the moment confidence ceases, privilege ceases, and the attorney must answer as any other witness.” And the examination was so shaped as to protect him from disclosing what he acquired a knowledge of, from his professional employment, and require him to testify as to all other matters.
I consider this case as carrying with it the authority of Lord Eldon to this position, that an attorney is precluded from disclosing communications made in the course of a professional employment, and for the purpose of giving legal advice, al-. though such employment was not immediately connected with the conduct of a legal proceeding.
*99 But without further commenting upon the authorities, I will cite a passage from the 6th edition of that excellent work, Phillips on Evidence, published in 1824. It is not to be found in the earlier editions, and probably it was not till about the time of the date of this late edition, that the question had been distinctly raised and discussed. 1 Phillips, 134. “ This privilege of the client is not confined to those cases only, where he has employed the attorney in a suit or cause, but extends to all such communications as are made by him to the attorney in his professional character, and with reference t.i professional business. If an attorney were to be consulted on the tide to an estate, he would never be allowed to disclose any information thus communicated to him, to the prejudice of his client. 2 Brod. & Bingh. 6. Or if an attorney were professionally employed to make a draft of an assignment of goods, which however he declined to make, he would not be allowed to disclose that circumstance, in case a question should arise, whether an assignment, subsequently drawn by another attorney, was fraudulent. Cromack v. Heathcote, 2 Brod. & Bingh. 4.”
On the whole we are of opinion, that although this rule of privilege, having a tendency to prevent the full disclosure of the truth, ought to be construed strictly ; yet still, whether we consider the principle of public policy upon which the rule is founded, or the weight of authority by which its extent and limits are fixed, the rule is not strictly confined to communications made for the purpose of enabling an attorney to conduct a cause in court, but does extend so as to include communications made by one to his legal adviser, whilst engaged and employed in that character, and when the object is to get his legal advice and opinion as to legal rights and obligations, although the purpose be to correct a defect of title, by obtaining a release, to avoid litigation by compromise, to ascertain what acts are necessary to constitute a legal compliance with an obligation, and thus avoid a forfeiture or claim for damages, or for other legal and proper purposes, not connected with a suit in court.[1]
*100 The rule, thus qualified, is still open to many well defined exceptions. The person consulted must be of the profession of the law, and it is not enough that the party making the communication thinks .he is. Fountain v. Young, 6 Esp. R. 113. He must be consulted or employed in the particular business to which it relates. Wilson v. Rastall, 4 T. R. 753.[2] The communication must be made during his employment and not before, (Bul. N. P. 284,) nor after. Cobden v. Kendrick, 4 T. R. 432. So the privilege does not extend to matters not communicated by his client as confidential, but tacts known of his own knowledge ; Lord Say Sf SeaVs case, 10 Mod. 40;[3] nor to the fact of the execution of a deed, especially if attested byhim ; Doe v. Andrews, Cowp. 846 ; nor to the handwriting of the client, though the knowledge of it has been acquired in consequence of the employment ; Hurd v. Mo-ring, 1 Carr. & P. 372 ;[1] nor to the fact of his client having sworn to an answer in chancery ; Doe v. Andrews, Cowp. *101 846 j and so of other collateral facts, not confidentially communicated.[2] With these limitations, we think that conform-ably to the principle upon which the rule is founded, the privilege extends to communications made to a legal adviser, duly qualified as such, employed and acting in that capacity, where the object of the party is to obtain a more exact and complete knowledge of the law, affecting his rights, obligations or duties, relative to the subject matter to which such communications relate.
As Mr. Robinson knew nothing except what Nehemiali Foster communicated to him as an attorney, for the purpose of obtaining legal advice, we think that his testimony was rightly rejected.[3]
Another exception taken, was, that evidence of other fraudulent conveyances, made at or about the same time with the conveyance in question, was held inadmissible, unless some evidence was offered that the demandant knew of these particular conveyances, or of a general purpose of the grantor, to convey away his property to the injury of his creditors.
This decision, we think, was incorrect. The fact to be proved was, that the conveyance was with a fraudulent intent to delay or defeat the creditors of the grantor, by preventing them from securing their debts by attachment, in which case, as against such creditors, the conveyance would be inoperative and void. But the law does not put this construction upon the conveyance, unless there was a fraudulent intent in both parties, nor can the estate of the grantee be defeated, by showing a fraudulent purpose in the grantor, unless it be also shown that the grantee participated in it, and by his coneur *102 rence promoted it. The proposition to be established then, by the attaching creditor who seeks to vacate a prior conveyance on the ground of fraud is, that the grantor made his conveyance with the intent and for the purpose of defrauding his creditors, by a pretended and colorable sale, or by a sale without consideration, or upon a secret trust contrary to good faith, and that the grantee knew of this intent and purpose, and participated in it. These propositions are in some measure independent of each other, inasmuch as there may be a fraudulent intent on the part of the grantor, but not known to the grantee, though proof of both must concur, to make out a case for the creditor. But the evidence to prove these several propositions may be of different kinds and drawn from different sources'.
In the case of Bridge v. Eggleston, 14 Mass. R. 245, this subject was much considered, and the Court, considering the rule before that time as somewhat unsettled, endeavoured to fix it upon a more exact basis. After much consideration it was decided, that as a fraudulent intent of the grantor and a knowledge of it or participation in it by the grantee, are both to be proved, the evidence may apply separately to the two branches of tliis case; To prove the fraud of the grantor, his conduct and declarations before the conveyance may be the best evidence of his fraudulent purpose ; and if this is proved, the knowledge of it on the part of the grantee may be proved by any circumstances tending to show a knowledge of the designs of the grantor. The Court at the same time hold, that without this latter evidence, the former would be wholly inef fectual to defeat the conveyance ; thereby deciding that the concurrence of a fraudulent design in both must be proved, to set aside the grant. Considering the rule as laid down in Bridge v. Eggleston, to be correct, we think the limitation under which the tenants were allowed to go into evidence of other fraudulent conveyances made at the same time, or previously to the conveyance to the demandant, as evidence of the fraudulent intent and design of the grantor, ought not to have been imposed ; but they ought to have been allowed to show, if they could, by the acts as well as the declarations of the *103 grantor, prior to the conveyance in question, that he had a fraudulent design, withou* requiring them to prove knowledge on the part of the demandant, of the particular acts of the grantor, from which such intent on his nart was to be in ferred.[1]
JVeio trial granted.

 Bowman v. Norton, 5 Carr. &. P. 177; Jackson v. French, 3 Wend. 337. In New Hampshire, the privilege of confidence extends to communications made to any person employed to manage a cause Bean v. Quimby, 5 N. H. R. 94.

 Doe v. Watkins, 3 Bingh. N. S. 421. If two parties in dispute have the «ame attorney, a communication made by one to him in his common capacity is not privileged as against the other. Baugh v. Cradock, 1 Mood. & R. 182; Cleeve v. Powell, ibid. 228. So, a communication made by a mortgager, in treaty to raise money, to the attorney of the mortgagee, is not privileged. Marston v. Downes, 1 Adol. & Ellis, 31.

 Gretnough v. Gaskell, 1 Mylne & K. 98; Doe v. Harris, 5 Carr. & P. *100 592; Mynn v. Joliffe, 1 Moody & Rob. 326. See Clark v. Clark, ibid. 3; Parker v. Carter, 4 Munf. 273; Beltzhoover v. Blackstock, 3 Watts, 20; Hamilton v. Heel, 7 Whart. 517; Crawford v. M'Kissack, 1 Porter, 433; Chirac v. Rein taker, 11 Wheat. 280; Beard v. Ackerman, 5 Esp. R. 120; Sloman v. Herne, 2 Esp. R. 696; Hughes v. Biddulph, 4 Russ. 190; Garland v. Scott, 3 Sim. 396; Vent v. Parcey, 4 Russ. 193; Moore v. Terrell, 4 Barn. & Adol. 871; Griffith v. Davies, 5 Barn. & Adol. 502; Rex v. Brewer, 6 Carr. & P. 363; Doe v. Seaton, 2 Adol. & Ellis, 171; Wheatley v. Williams, 1 Meeson & W. 533; Pritchard v. Foulkes, 1 Coop. Ch. C. 14; Desborough v. Rawlins, 3 Mylne & Cr. 515; Beckwith v. Benner, 6 Carr. & P. 681. Where a debtor requested an attorney to prepare a mortgage of personal property, and disclosed the object of the transaction, but neither asked nor received of him legal advice as to its effect, his testimony as to such disclosure is admissible. Hutton v. Robinson, 14 Pick. 416. An attorney who prepares deeds granted on an usurious consideration, may be called to prove the usury. Duffin v. Smith, Peake, 108.

 An attorney may be required to testify as to information received by him in the character of a friend, and not as counsel; Hoffman v. Smith, 1 Caines, 157; or where he is employed in matters not professional. Walker v. Wildman, 6 Madd. 47. So he may be required to disclose the name of his client in a particular suit, but not the situation of an instrument when it was placed in his hands to be put in suit. Brown v. Payson, 6 N. H. R. 443. But see Baker v. Arnold, 1 Caines, 258.

 Rhoades v. Selin, 4 Wash. C. C. R. 718; Rogers v. Dan, Wright, 136.

 An attorney is bound to testify as to the handwriting of his client, if hit knowledges acquired without any communication from him Johnson v. Da vergne, 19 Johns. R. 134.

 Heisler v. Davis, 3 Yeates, 4; Riggs v. Denniston, 3 Johns. Cas. 198.

 As to the duty of an attorney in regard to the production of papers intrusted with him as such, see Marston v. Downes, 1 Adol. & Ellis, 31; Jackson v. Burtis, 14 Johns. R. 391; Lynde v. Judtl, 3 Day, 499; Darkee v. Lelund, 4 Vermont R. 612; Rhoades v. Selin, 4 Wash. C. C. R. 718; Brandt v. Klein, 17 Johns. R. 335; Jackson v. M'Vey, 18 Johns. R. 330; Anon. 8 Mass. R. 370; State v. Squire, 1 Tyler, 147; M'Pherson v. Rathbone, 7 Wend. 216; Parker v. Yeates, 12 Moore, 520; Doe v. Thomas, 9 Barn. & Cressw. 288; Rex v. Upper Boddington, 8 Dowl. & Ryl. 726; Bevan v. Waters, Mood. & Maik. 235.

 See Hawes v. Dinghy, 5 Shepl. 341; Howe v. Reed, 3 Fairf. 5 IE