In re **GRAND JURY PROCEEDINGS, DETROIT, MICHIGAN, AUGUST, 1977.**

In the Matter of Lawrence S. JACKIER.

No. 77–253.

United States District Court, E. D. Michigan, S. D.

Aug. 2, 1977.

William J. Richards, Asst. U. S. Atty., Detroit, Mich., for Grand Jury.

Lawrence S. Jackier, pro se.

Richard A. Rossman, Pleasant Ridge, Mich. for Edmund Faudman.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter is brought before the court by Edmund W. Faudman to quash a grand jury subpoena directed to Lawrence S. Jackier to appear and give testimony before a grand jury. Mr. Jackier is an attorney at law and was at one time attorney for Arnolds, Inc. At the same time, Mr. Faudman was vice president in charge of the Pharmacy Division of Arnolds, Inc. During this time, Faudman in his capacity as vice president of Arnolds, Inc., consulted Jackier in his capacity as attorney to Arnolds, Inc., concerning a matter about which the grand jury is now investigating. Written and oral communications passed between the two, from Faudman as vice president of Arnolds, Inc., to Jackier, Arnolds' attorney, and from Jackier, Arnolds' attorney, to Faudman as Arnolds' vice president. The subpoena seeks to call Jackier before the grand jury to reveal these communications.

Up to a point the facts of this current case parallel those of *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 (E.D.Pa.1962), which articulated the "control" theory for the consideration of attorney-client privilege as it relates to a corporation. Clearly Faudman was one of a control group and his statements to Arnolds' attorney and the attorney's response to him as one of Arnolds' principal operating officials were "communications made for the purpose of facilitating the rendition of professional legal services to the client." The fact that they were made by or to a representative of the client does not make them any less such a communication.

However, in this case the client, Arnolds, Inc., has waived the privilege. It has taken formal action to cooperate fully with the grand jury investigation and has directed its general counsel to instruct Jackier not to claim the privilege on its behalf. It is this fact that presents for the first time, as far as this court has been able to determine, the issue of whether an operating official of a corporation (a member of a so-called control group) can claim the attorney-client privilege and prevent disclosure of communications between himself and the corporation's attorney when the corporation has waived the privilege. This being the first case of its kind that this court can find, it is necessary to step back and put the problem fully in perspective.

In general, privileges are not favored in the law. They are developed and expanded only to accommodate needs that can be narrowly defined and, when so defined, require protection to a greater degree than does the need for testimony.

People in need of legal services should be encouraged to consult with lawyers of their choosing and when they do, with limited exceptions, the communication between them is privileged. The privilege has been fully and adequately expressed in proposed Rule of Evidence 503: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1)

between himself or his representative and his lawyer . . . ." [1]

As stated the privilege is that of the client. In this case the client is Arnolds, Inc., and it has waived the privilege. Jackier testified that in all conversations with Faudman, he understood that he was acting as Arnolds' attorney and that Faudman was consulting him as Arnolds' attorney. His responses were directed to Arnolds, through Faudman, the vice president.

 The concept of a representative of the client comes into the rule and is needed to permit an accurate consideration of how a corporation communicates with a lawyer. Surely Faudman was a representative of the client. Surely his communications with Jackier were privileged, but the privilege was that of Arnolds under the traditional statement of the rule. The determination of who the client is is completely unaffected by cases such as *City of Philadelphia v. Westinghouse Electric Corp., supra.*

Should the privilege be extended to include among the protected the communicating officer?

If the communicating officer seeks legal advice himself and consults a lawyer about his problems, he may have a privilege. If he makes it clear when he is consulting the company lawyer that he personally is consulting the lawyer and the lawyer sees fit to accept and give communication knowing the possible conflicts that could arise, he may have a privilege. But in the absence of any indication to the company's lawyer that the lawyer is to act in any other capacity than as lawyer for the company in giving and receiving communications from control group personnel, the privilege is and should remain that of the company and not that of the communicating officer.

Such a rule should not inhibit obtaining legal advice. The vice president is free to get legal advice about his problems at any time from any lawyer. Such a rule should tend to prevent inadvertent conflicts of interest from developing because to create the privilege in someone other than the company it must be made clear to the lawyer that the intended client (control group personnel) is someone other than the company, and the lawyer at that time could choose whether to accept the communication on such terms.

Thus, because the privilege in this case is Arnolds' and Arnolds has waived the privilege and, because Faudman was not a client of Jackier and did not have a privilege as to communications with Arnolds' lawyer, the motion to quash the subpoena will be denied.

So ordered.

---

1. The fact that Congress did not enact this rule into law when it adopted the Federal Rules of Evidence does not lessen the value of the rule as a source to define the scope of the privilege. Rule 501, Federal Rule of Evidence, provides that the privileges of witnesses "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." The draft of Rule 503 referred to was not rejected by the Congress because of any

decision that it was in error on the merits, but on the theory that rules of privilege should not be enunciated by rule. What more accurate expression of the principles of the common law and of the application of reason and experience could exist than a draft that was developed by a representative committee of bench, bar and scholars, twice published and commented on by the bench and bar, adopted by the Judicial Conference and finally forwarded by the Supreme Court to Congress for promulgation.