**UNITED STATES of America,**

v.

**F. William SAWYER.**

**Crim. A. No. 94–10168–NMG.**

United States District Court,
D. Massachusetts.

Feb. 10, 1995.

Thomas R. Kiley, Cosgrove, Eisenberg & Kiley, Boston, MA, for Sawyer.

Robert L. Ullman, U.S. Attorney's Office, Crim. Deputy Associate U.S. Atty., Boston, MA, for U.S.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The defendant, F. William Sawyer ("Sawyer"), has moved this Court to exclude from evidence his allegedly privileged communications with in-house counsel of John Hancock Mutual Life Insurance Company ("Hancock"). More specifically, Sawyer seeks to suppress evidence relating to two conversations that he had with Hancock Attorneys,

Richard Scipione and Bruce Skrine in May, 1993.

## I. BACKGROUND

At all times relevant to this motion, Sawyer was a vice-president of, and chief lobbyist for, Hancock. In his capacity as a lobbyist, Sawyer often consulted Hancock's Law Department and obtained legal advice regarding 1) the ethics and reporting laws governing "legislative agents" (the statutory term for lobbyists in Massachusetts) and 2) the consequences that various proposed bills would have on the insurance industry.

On or about April 30, 1993, Hancock and Sawyer became aware that *The Boston Globe* newspaper ("the Globe") intended to print an article concerning the defendant's alleged gifts of free golf, meals and other entertainment to Massachusetts legislators attending a conference in Puerto Rico in December, 1992. In response to the Globe's inquiries, Hancock initiated an internal investigation into Sawyer's expenditures.

Attorney Bruce Skrine, who has been employed by Hancock since 1979 and is currently Chief Corporate Counsel, Corporate Secretary and a vice-president of Hancock, met with Sawyer on May 3, 1993, to discuss Sawyer's expenditures in Puerto Rico and the Globe's inquiries. Skrine has testified that he "prefaced [his] conversation with Mr. Sawyer by reminding him that [he, Mr. Skrine,] was gathering facts in [his] capacity as attorney for the Company." Skrine also told Sawyer that he intended to discuss their conversation and Sawyer's entertainment of legislators with "senior management" at Hancock, and that Hancock intended to bring the whole matter to the attention of the State Ethics Commission.

On May 17, 1993, Sawyer met with General Counsel, Richard Scipione, and the President of Hancock, William Boyan. At that meeting, Boyan informed Sawyer that, effective immediately, Sawyer would report directly to Scipione. Boyan also declared a complete moratorium on all lobbying expenditures and warned Sawyer of possible future disciplinary action. Scipione told Sawyer that Hancock planned to complete its review of the matter as a "team effort," but that the interests of Hancock and Sawyer could, at some point, be in conflict.

## II. DISCUSSION

Sawyer advances two theories in support of his motion to suppress all evidence relating to his communications with Skrine and Scipione in May, 1993.

### A. *Individual Attorney–Client Privilege*

█ Sawyer argues that Scipione and Skrine served two roles: as in-house counsel for Hancock and as individual attorneys for Sawyer. According to Sawyer, when he met with Scipione and Skrine to obtain "personal legal advice," he believed that they were serving as his attorneys and that their communications were therefore confidential. Because of his supposed "individual" attorney-client relationship with Skrine and Scipione, Sawyer asserts that his conversations with them are privileged.

The Court finds that, as an employee of Hancock, Sawyer had an obligation to aid Hancock's in-house counsel with their internal investigation, and that Sawyer met with, and spoke to, Hancock's lawyers not as an individual seeking personal legal advice, but as an employee fulfilling an obligation to his employer. The Court further finds that there is no evidence that 1) Sawyer consulted Hancock's lawyers on a personal basis or 2) Hancock's lawyers agreed to represent him on a personal basis. *See In re: Grand Jury Proceedings (Jackier)*, 434 F.Supp. 648, 650 (E.D.Mich.1977) (holding that, to establish an attorney-client privilege, a corporate officer must make it clear that he is consulting the in-house counsel on a personal basis, and the counsel must accept the representation); *In re: Standard Financial Mgmt. Corp.*, 77 B.R. 324, 328 (Bankr.D.Mass.1987) (same). Accordingly, this Court concludes that Sawyer has failed to carry his burden of proving that his "individual" attorney-client privilege attaches to the communications at issue. *See City of Worcester v. HCA Management Co., Inc.*, 839 F.Supp. 86, 88 (D.Mass.1993) (the party asserting the privilege has the burden of proving that it applies).

## B. *Joint Defense Privilege*

In the alternative, Sawyer argues that he and Hancock pursued a joint defense and that the joint defense privilege precludes the government from introducing into evidence his communications with Hancock's lawyers in May, 1993, because those communications were designed to further their joint defense effort.

In *United States v. Bay State Ambulance*, 874 F.2d 20 (1st Cir.1989), the First Circuit explained that:

> [i]n order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived.

*Id.* at 28 (*quoting In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir.1986)).

To satisfy the first requirement of the three-prong test and to be entitled to invoke the privilege, Sawyer must prove that he and Hancock agreed to pursue a joint defense. *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d at 126 (rejecting a claim of joint defense privilege because the party "produced no evidence that [there was an agreement] to pursue a joint defense strategy"). Sawyer admits that he did not have a formal agreement with Hancock, but he claims that the Court can infer an informal joint-defense agreement based upon:

1) the shared interest of Sawyer and Hancock in possible violations of Massachusetts "gift" statutes,

2) Hancock's obligation to indemnify Sawyer for legal expenses,

3) the expressed request of Scipione and Skrine for Sawyer to join them in a "team effort", and

4) Sawyer's expressed willingness to sign on to Hancock's proposed strategy of sharing information and contacting state regulators (i.e. the State Ethics Commission).

In support of his argument, Sawyer relies on *SIG Swiss Industrial Co. v. Fres–Co System, USA, Inc.*, No. 91–0699, 1993 WL 82286, 1993 U.S.Dist. LEXIS 3576 (E.D.Pa.1993), ("*SIG*"), which held that a defendant can invoke the joint defense privilege even if there is no formal, written agreement among the defendants to pursue a joint defense. *Id.*

 The Court rejects Sawyer's argument and finds that, based upon the evidence of record, including the testimony elicited at the hearing on February 8, 1995, Hancock and Sawyer did not have a joint-defense agreement. The Court finds that Attorneys Skrine and Scipione met with the defendant not to promote a joint defense, but as part of an internal investigation to discover facts relevant to the defendant's expenditures. Nor did Sawyer meet with Hancock's in-house counsel to further his "joint defense," but rather to fulfill his duties and obligations to report to his employer. *Cf. In re: Grand Jury Proceedings (Jackier)*, 434 F.Supp. at 650. The Court concludes that the parties' similar interests and Scipione's desire to pursue a "team effort" are insufficient to show that Sawyer's communications were made during the course of a joint defense effort.[1] *See Bay State Ambulance*, 874 F.2d at 28.

Sawyer retained an attorney on May 19, 1993, just two days after he met with Scipione and Boyan and sixteen days after his meeting with Skrine. That fact suggests to this Court that Sawyer understood from early on, and certainly after Scipione's warning, that his interests could conflict with those of Hancock. Furthermore, shortly after Sawyer retained counsel, he sought to enter into a joint defense agreement with Hancock, but Hancock rejected the his offer. It is significant, in this Court's opinion, that Sawyer, himself, is unable to determine exactly 1) the time frame of his alleged "short-lived" joint defense agreement and 2) the acts that constituted and/or terminated that agreement.

---

1. Even if Sawyer believed that he and Hancock were advancing a joint defense, it would be unavailing because one party's mistaken belief about the existence of a joint defense does not, and cannot, give rise to a joint defense privilege. *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d at 126.

Finally, Sawyer's reliance on the *SIG* case is misplaced. *SIG* is distinguishable from the case at bar for at least three reasons:

(1) *SIG* was a civil action.

(2) In *SIG*, the parties who invoked the joint-defense privilege were already engaged in litigation against a common opponent, whereas here there were no charges, civil or criminal, pending against the defendant or Hancock at the time of the alleged agreement.

(3) The parties who invoked the joint-defense privilege in *SIG* were separate, distinct entities who communicated with one another for the sole purpose of advancing their respective legal positions vis-a-vis their common opponent. Conversely, in the case at bar, the Court finds that Sawyer did not communicate with Hancock's in-house counsel because of an agreement to advance a joint-defense agreement, but rather because of his perceived obligation to serve his employer, Hancock.

*Cf. SIG Swiss Industrial Co.,* No. 91–0699, 1993 WL 82286, 1993 U.S. Dist. LEXIS 3576.

Consequently, because Sawyer has failed to show that the communications at issue were made during the course of a joint defense effort, this Court finds that he is not entitled to invoke a joint defense privilege. *See Bay State Ambulance,* 874 F.2d at 28; *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F.2d at 126; *In re: Grand Jury Proceedings (Jackier),* 434 F.Supp. at 650.

### ORDER

For the foregoing reasons, the defendant's *in limine* motion to exclude evidence relating to the defendant's communications with Hancock's in-house counsel is **DENIED**.

So Ordered.