King, J.
This action alleges personal injuries and wrongful death arising out of a car accident. Defendant First Security Services Corporation moves to quash the notices of deposition for David Traniello, Michael Montuori and Dennis Peloquin and/or to limit the scope of their deposition testimony. Defendant Jeffrey Marshall joins the motion as to the deposition testimony of Michael Montuori and Dennis Peloquin regarding their communications with him. The defendants assert that the anticipated areas of inquiry are protected by the attorney-client privilege and by Mass.R.Civ.P. 26(b). For the reasons set forth below, the defendants’ motions will be allowed in part and denied in part.
BACKGROUND
On December 18,1994, defendant Jeffrey Marshall, an employee of defendant First Security Services Corporation (First Security), was driving an Emmanuel College shuttle van at the intersection of Massachusetts Avenue and Marlborough Street in Boston. The van struck pedestrians Carol and Philip Levine, killing Philip Levine and seriously injuring Carol Levine.
Plaintiff noticed the depositions of Dermis Peloquin and Michael Montuori, employees of First Security involved in the investigation on the night of the accident. Plaintiff also noticed the deposition of David Traniello, a law clerk employed by First Security who unsuccessfully attempted to locate the personnel file of defendant Marshall. First Security filed a motion to quash and/or limit the deposition testimony of all three employees. Marshall joins in the motion to quash and/or limit the deposition testimony of Peloquin and Montuori.
On January 10, 1997, this court ordered the depositions postponed until a ruling on this motion, and, at a May 29, 1997 hearing, ordered the defendants to file for in camera review any privileged documents about which the three witnesses may be asked. The court also directed counsel to furnish the court with *182 a complete copy of Mr. Marshall’s deposition transcript. After reviewing the documents filed with the court and after considering the arguments of counsel and the applicable law, the court makes the following rulings.
DISCUSSION
A. Confidential communications with in-house corporate counsel for First Security
Documents about which the witnesses may be asked include a five-page written statement of defendant Marshall and an “internal attorney privilege memorandum,” prepared by Peloquin following his investigation the night of the accident, at the direction of First Security’s in-house counsel.
1. Attorney-client privilege
The attorney-client privilege extends to confidential communications between a client or his representative and a lawyer or his representative for the purpose of obtaining or rendering professional legal services. Mass. Evid. Standard 503 (West 1995). The privilege is “founded on the necessity that a client be free to reveal information to an attorney, without fear of its disclosure, in order to obtain informed legal advice.” Purcell v. District Attorney for the Suffolk District, 424 Mass. 109, 111 (1997). The privilege extends to communications from the client’s agent or employee, Ellingsgard v. Silver, 352 Mass. 34, 40 (1967), and to “those whose intervention is necessary to secure and facilitate the communication between attorney and client.” Foster v. Hall, 29 Mass. 89, 93 (1831) (including interpreters, agents, and attorneys’ clerks).
Communications between employees and corporate counsel acting as such are protected by the attorney-client privilege where the communications concerned matters within the scope of the employee’s duties, the employee was sufficiently aware that the information sought was for the purpose of obtaining legal advice, and the communications were confidential when made and remained so. Upjohn Co. v. United States, 449 U.S. 383, 394-95 (1980) (questionnaire sent to all “foreign general and area managers” concerning accounting audit from company chairman requesting responses directed to company counsel protected by the privilege). “[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of the information to the lawyer to enable him to give sound and informed advice.” Id. at 390.
a. Motion of First Security
Marshall’s statement, obtained by First Security investigator Peloquin on the night of the accident at the request of First Security’s counsel, Lawrence T. Curran, is protected by the attorney-client privilege and need not be produced to the plaintiff. Marshall’s statement was produced in confidence at the request of an attorney for the purpose of rendering legal advice to First Security and given to the attorney’s representative.
Peloquin’s investigative report, containing a summary of his conversation that night with Marshall, is similarly protected from disclosure by the attorney-client privilege. As First Security’s employee directed by in-house counsel to investigate the accident and obtain a statement from Marshall immediately following the accident, Peloquin’s communication to in-house counsel was “necessary to secure and facilitate communication” between First Security’s employee and its attorney. Peloquin’s communication is also protected as he was an employee of First Security reporting to the attorney about actions within the scope of his duties as an investigator for the company.
The plaintiff may depose Peloquin and Montuori, but may not question them regarding their communications related to the accident with First Security’s in-house counsel or with First Security employees. These communications are protected by the attorney-client privilege. See Upjohn, supra, Ellingsgard, supra, and Foster, supra.
b. Motion of Marshall
Marshall joined the motion to quash and/or limit the deposition testimony, asserting the attorney-client privilege and the work product doctrine as to the documents filed with the court for in camera review and related communications. “The burden of proving that the attorney-client privilege applies to a communication rests on the party asserting the privilege.” Purcell, supra at 115 (citations omitted). Marshall has not met his burden in this case because he has not established the existence of an attorney-client relationship. Marshall has not shown an explicit agreement with First Security’s in-house counsel for individual legal services relating to the accident. An attorney-client relationship may be implied when a person seeks advice from an attorney within the attorney’s professional competence, and the attorney agrees to give such advice. DeVaux v. American Home Assurance Co., 387 Mass. 814, 818 (1983). The court finds no evidence that Marshall sought advice from First Security’s in-house counsel concerning his own individual liability for the accident.
Moreover, in order to assert an individual attorney-client relationship with in-house counsel, “it must be made explicitly clear to counsel that the advice sought is individually rather than in a corporate capacity.” In re Standard Financial Management Corp., 77 B.R. 324, 328 (Bankr. D. Mass. 1987). See also U.S. v. Sawyer, 878 F.Supp. 295 (D.Mass. 1995), vacated on other grounds, 85 F. 3d 713 (1996). In Sawyer, an employee who was later charged with violation of the ethics and reporting laws governing lobbyists, met with his employer’s in-house counsel during an internal investigation of the alleged violations. At his criminal trial, the court rejected the employee’s assertion of the attorney-client privilege for those communications, *183 stating that as an employee, he “had an obligation to aid [his employer’s] in-house counsel with their internal investigation.” Id. at 296. Likewise, in this case, there is no evidence that Marshall sought personal legal advice from First Security’s in-house counsel, and that counsel agreed to represent him on a personal basis. Marshall simply cooperated in his employer’s investigation.
To the extent that Marshall has been requested by plaintiff to produce the two documents for which he asserted an attorney-client privilege, Marshall has no such privilege to assert and must produce the documents to the plaintiff.
2. Ethical considerations
The court reviewed in camera Marshall’s handwritten statement, his deposition testimony and Peloquin’s investigative report. The documents contain information which plaintiffs counsel would find highly relevant on the issue of liability. Marshall’s deposition testimony concerning what he was doing immediately prior to the fatal accident differs substantially from his handwritten statement and the statement he gave Peloquin at the request of in-house counsel on the night of the accident.
Under the circumstances, First Security’s trial counsel[1] is faced with an ethical obligation. Under Disciplinary Rule 7-102(B),
[a] lawyer who receives information clearly establishing that: (1) His client has, in the course of representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal, except when the information is protected as a privileged communication.
SJC Rule 3:07, DR 7-102(B)(1). Perjury committed “in the course of an ongoing civil lawsuit” is fraud within the meaning of DR 7-102(B)(1). Mass. Bar Assoc. Committee on Professional Ethics Opinion No. 89-1 (1989). If the client refuses to rectify the fraud, DR 7-102(B)(1) requires the attorney to disclose the fraud if DR 4-101(C)(3) applies. Id. See also MBA Opinion Nos. 93-3, 91-6, 91-4.[2] DR 4-101(0(3) applies where the client “refuses to correct his lie” and the client (1) “intends to repeat the perjury,” or (2) “the perjury, together with the future intended conduct in the litigation, will constitute a new and distinct crime.” Id. Perjury at trial would constitute a new and distinct future crime. In these circumstances, the attorney’s disclosure is mandatory regardless of the privilege. Id. Where an attorney is not aware of any intent of the client to commit a future crime, the attorney must nevertheless at least withdraw “where the lawyer knows, for example, that his client has knowingly and falsely authenticated a document that is material to the case” in violation of DR 7-102(A)(7).[3] Id.
Under these circumstances, the court will order First Security’s counsel to provide the court with a sealed report of the measures taken to rectify any fraud counsel reasonably determines has been perpetrated on the court and the plaintiff. If she has not yet done so, First Security’s counsel must first attempt to persuade Marshall, the employee of her client First Security, to rectify the apparent fraud. The court will permit the further taking of defendant Marshall’s deposition regarding his actions immediately prior to the accident. If Marshall’s testimony remains consistent with his prior deposition testimony, then it now appears that First Security’s counsel must, at a minimum, withdraw from representation. Counsel for First Security should also attempt to persuade First Security to rectify the apparent fraud by agreeing to the disclosure of the document in question.
If Marshall’s trial counsel is aware of the contents of the documents submitted with the privilege log to the court, he also has a similar ethical obligation, and the court will make the same order to Marshall’s trial counsel.
B. Non-privileged documents created in anticipation of litigation
Defendants First Security and Marshall assert the attorney-client and work product doctrine as to (1) the statement of Kristin Finn, a passenger in the van driven by Marshall and witness to the accident, (2) the investigator’s memoranda of conversations with Finn, Cynthia Brown, Frederic Hoyos, Angel Camara and Penny Maciejka, all passengers and witnesses to the accident, and (3) the in-house counsel memorandum regarding the photographs of the scene of the accident as well as copies of the photographs themselves.
These items are not protected by the attorney-client privilege because although the statements were made to representatives of First Security’s in-house counsel, they were not made by employees or agents of First Security. See Hickman v. Taylor, 329 U.S. 495, 508 (1946) (“protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation”).
Documents may be discovered which are relevant to the lawsuit and not privileged
and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent by other means.
Mass.R.Civ.P. 26(b)(3). Peloquin and Montuori took the witness statements and wrote memoranda of their conversations with the witnesses at the direction of *184 in-house counsel for First Security. These documents were generated in anticipation of litigation by representatives of First Security, and were not generated in the ordinary course of business. Cf. Sham v. Hyannis Heritage House Hotel, Inc., 118 F.R.D. 24 (1987) (conclusoiy argument, unsupported by facts, insufficient to show that insurance investigator’s report was in anticipation of litigation rather than in the ordinary course of business); Shotwell v. Winthrop Community Hosp., 26 Mass.App.Ct. 1014 (1988) (“Incident/Deviation/Unusual Occurrence Report" filled out by nurse and filed with quality assurance department not protected by work product doctrine because in the ordinaiy course of business). The documents, therefore, are entitled to protection under the work product doctrine.
Plaintiff may overcome this protection if she demonstrates a substantial need for the documents and undue hardship in obtaining the materials through other means. Plaintiff has made no such showing. See Order of the Court (Kottmyer, J.), May 31, 1996 (party seeking production of witness statement to make showing of substantial need in writing by June 14, 1996). The court finds that the plaintiff is free to notice the deposition of the witnesses at issue and inquire directly as to their observations. Hickman, supra at 509. The court further finds that plaintiff can demonstrate no substantial need or undue hardship in obtaining the information contained in the accident scene photographs and related memorandum because of the report made by the Boston Police Department accident reconstruction team the night of the accident. This report is available to the plaintiff and contains photographs of the scene. The defendants’ motion as to the statement of Kristin Finn, the memoranda of conversations with the other witnesses and the accident scene photographs and related memorandum will be allowed.
C. Deposition of David Traniello
Plaintiff seeks to depose Traniello, a law clerk for First Security’s in-house counsel, for the limited purpose of determining the location of defendant Marshall’s missing personnel file at First Security. Plaintiff is not seeking to question Traniello regarding attorney-client communications. The court will deny defendant First Security’s motion to quash, his notice of deposition for the purpose of locating the missing file.
ORDER
For the foregoing reasons, the court hereby ORDERS as follows;
(1)Defendant First Security’s motion to limit the deposition testimony of Dennis Peloquin and Michael Montuori is ALLOWED so as to exclude from the scope of the depositions communications protected by the attorney-client privilege;
(2) Defendant Jeffrey Marshall’s motion to limit the deposition testimony of Dennis Peloquin and Michael Montuori is ALLOWED;
(3) Defendant First Security’s motion to quash the deposition testimony of David Traniello is DENIED, except that the scope of the deposition must exclude communications protected by the attorney-client privilege;
(4) Defendant First Security’s attorney is ORDERED to submit a sealed statement to the court within 21 days regarding her efforts to meet her ethical obligations in the face of inconsistent testimony offered by her client’s employee;
(5) Defendant Marshall’s attorney is also ORDERED to submit a sealed statement to the court within 21 days describing his knowledge of the contents of the privileged communications between his client and in-house counsel for defendant First Security, and if he is aware of the contents, he must describe for the court his efforts to meet his ethical obligations in the face of inconsistent testimony offered by his client;
(6) The defendants’ motion as to the witness statement, memoranda of conversations with witnesses and memorandum regarding accident scene photographs and attached copies of the photographs is ALLOWED.

 The ethical obligations of trial counsel for First Security extends to Marshall and Peloquin as they are employees and agents of First Security, and a corporation can act only through its employees and agents.

 This view accords with the amendments to SJC Rule 3:07 effective January 1, 1998. Amended Rule 3.3(a)(4) states that “a lawyer shall not knowingly ... (4) offer evidence that the lawyer knows to be false ... If a lawyer has offered, or the lawyer’s client or witnesses testifying on behalf of the client have given, material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures.” SJC Rule 3:07, 3.3(a)(4), effective January 1, 1998, 25 M.L.W. 2185 (June 16,1997). This duly applies “even if compliance requires disclosure of information otherwise protected by” the attorney’s duty to keep confidential client information (Rule 1.6). Id. at 3.3(b). The comment to Rule 3.3 states that ”[u]pon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must take reasonable remedial measures ... [A]n advocate must disclose, if necessary to rectify the situation, the existence of the client’s deception to the court or to the other party.” The comment to Rule 1.6 states in part “(i]f the lawyer’s services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw ...” A lawyer “shall withdraw from representation” if it “will result in violation of the rules of professional conduct or other law.” SJC Rule 3:07, Rule 1.16(a)(1), effective January 1, 1998, 25 M.L.W. 2183 (June 16, 1997).

 DR 7-102(A)(7) prohibits an attorney from “counselling] or assisting] his client in conduct that the lawyer knows to be illegal or fraudulent.”